# EXHIBIT D

(PART 1 of 2)

CAUSE No. 2012CCV-62122 3

| | |
|---|---|
| GOLDMAN PHIPPS PLLC f/k/a GOLDMAN, PENNEBAKER & PHIPPS, PC, MIKAL C. WATTS, P.C., and MURRAY LAW FIRM, | IN THE COUNTY COURT AT LAW |
| Plaintiffs, | |
| v. | NO. 3 |
| GRAY, RITTER & GRAHAM, P.C., WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC, SEEGER WEISS LLP, NEBLETT BEARD & ARSENAULT, LLP, EMERSON POYNTER LLP, WHATLEY DRAKE & KALLAS LLP, LOOPER REED & MCGRAW, and CHAPMAN, LEWIS & SWAN, | NUECES COUNTY, TEXAS |
| Defendants. | |

## PLAINTIFFS' PETITION FOR DECLARATORY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Goldman Phipps PLLC f/k/a Goldman Pennebaker & Phipps, PC, Mikal C. Watts, PC, and Murray Law Firm ("Plaintiffs") petition this Court, pursuant to the Texas Uniform Declaratory Judgment Act ("TUDJA"), Chapter 37 of the Texas Civil Practice and Remedies Code, for the determination and declaration of the rights of the parties. In support of this Petition, Plaintiffs will show:

### A. PARTIES

1.      Plaintiff GOLDMAN PHIPPS PLLC f/k/a GOLDMAN PENNEBAKER & PHIPPS, PC, is a professional limited liability corporation and law firm organized and existing under the laws of the State of Texas with its principal place of business in Texas.

2.      Plaintiff MIKAL C. WATTS, PC, is a professional corporation existing under the laws of the State of Texas with its principal place of business in Texas.

3.     Plaintiff MURRAY LAW FIRM is a sole proprietorship and law firm organized and existing under the laws of the State of Louisiana with its principal place of business in Louisiana.

4.     Plaintiffs represented rice farmers and farming operations across the states of Texas, Arkansas, Louisiana and Mississippi, making claims against Bayer — Bayer CropScience LP, Bayer CropScience Holding Inc., Bayer CropScience Inc., Bayer CropScience LLC, Stoneville Pedigreed Seed Company, Bayer Corporation, Bayer AG, Bayer CropScience AG, Bayer BioScience NV, Bayer CropScience Holding SA, and Bayer CropScience SA ("Bayer") and other defendants in what is known as the "GMO Rice Litigation."   Some of Plaintiffs' clients' cases were governed by a federal MDL proceeding.  *In re Genetically Modified Rice Litigation*, 4:06-md-1811.  Other clients' cases fell outside of the federal MDL proceeding and remained in state court. The federal district court presiding over the federal MDL proceeding acknowledged a lack of jurisdiction over non-MDL clients' claims.   After multiple years of litigation against Bayer, Plaintiffs jointly executed a settlement agreement with Bayer on behalf of Plaintiffs' non-MDL clients (clients with state court cases and other clients falling outside the federal MDL proceeding). This settlement agreement is known as the "GMB Settlement Agreement," a copy which is attached as Exhibit "A."  This Petition seeks declarations from this Court regarding the rights of the parties to attorney's fees and expenses from the GMB Settlement Agreement.

5.     Separate and apart from the GMB Settlement Agreement, another settlement agreement was reached to resolve the claims of rice farmers and farming entities whose claims fell within the federal MDL proceeding. This separate agreement is known as the federal "MDL Settlement Agreement."   Plaintiffs are not party to the MDL Settlement Agreement.  Rather, this agreement was entered into by Bayer and attorneys appointed by the presiding federal MDL court as "Plaintiffs' Lead Counsel and Executive Committee" – the Defendants. This Petition does not

2

seek declarations from this Court regarding rights related to the MDL Settlement Agreement.

6.     The GMB Settlement Agreement called for the creation of a Qualified Settlement Fund ("QSF") to accept settlement funds from Bayer to distribute client payments, attorney's fees, and expenses. The Court entered Orders Approving Establishment and Modification of Plaintiffs' QSF, including provisions that disputes as to distributions from the QSF be resolved in the manner described by the QSF Agreement, a copy of which is attached as Exhibit "B," which provides for adjudication of any such disputes in Nueces County, Texas. This QSF is domiciled in Nueces County, Texas, and governed by the laws of Texas.

7.     Defendants are members of the Federal MDL Plaintiffs' Lead Counsel and Executive Committee in the federal MDL proceeding, *In re Genetically Modified Rice Litigation*, 4:06-md-1811, coordinated in the United States District Court, Eastern District of Missouri, Honorable Catherine D. Perry presiding:

a.     Defendant GRAY, RITTER & GRAHAM, P.C., is a professional corporation existing under the laws of, and with its principal place of business in, the State of Missouri.  Service of process may be accomplished by serving its registered agent, Stephen R. Woodley, at 701 Market Street, 8th Floor, St. Louis, Missouri 63101.

b.     Defendant WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC, is a limited liability company existing under the laws of, and with its principal place of business in, the State of Illinois. Service of process may be accomplished by serving registered agent, Mary Jane Fait, Esq., at 55 Monroe Street, Suite 1111, Chicago, Illinois 60606.

c.     Defendant SEEGER WEISS LLP, is a limited liability partnership existing under the laws of, and with its principal place of business in, the State of New York.

Service of process may be accomplished by serving general partner Stephen A. Weiss, at One William Street, New York, New York 10004-2595.

      d.      Defendant NEBLETT BEARD & ARSENAULT, LLP, is a limited liability partnership existing under the laws of, and with its principal place of business in, the State of Louisiana.  Service of process may be accomplished by serving general partner Richard J. Arsenault, at 2220 Bonaventure Court, Alexandria, Louisiana 71301.

      e.      Defendant EMERSON POYNTER LLP, is a limited liability partnership existing under the laws of, and with its principal place of business in, the State of Arkansas.  Service of process may be accomplished by serving registered agent, Scott E. Poynter, at 500 President Clinton Avenue, Suite 305, Little Rock, Arkansas 72201.

      f.      Defendant WHATLEY DRAKE & KALLAS LLP, is a limited liability company existing under the laws of, and with its principal place of business in, the State of Alabama.  Service of process may be accomplished by serving registered agent, Joe R. Whatley, Jr., Suite 1100 Financial Center, 505 20th Street North, Birmingham, Alabama 35203-2605.

      g.      Defendant LOOPER REED & MCGRAW, is a professional corporation existing under the laws of, and with its principal place of business in, the State of Texas. Service of process may be accomplished by serving registered agent, James Gray, at 1300 Post Oak Boulevard, Suite 2000, Houston, Texas 77056.

      h.      Defendant CHAPMAN, LEWIS & SWAN, is a professional limited liability company existing under the laws of, and with its principal place of business in, the State of Mississippi.  Service of process may be accomplished by serving registered agent, Ralph E. Chapman, at 501 1st Street, P.O. Box 428, Clarksdale, Mississippi 38614.

8.     Defendants are not parties to the GMB Settlement Agreement, do not have contracts for the representation of any client covered under the GMB Settlement Agreement, and are not parties to Plaintiffs' QSF.

## B. DISCOVERY PLAN

9.     This is a suit for declaratory judgment under Chapter 37 of the Texas Civil Practice & Remedies Code.  As such, it does not qualify for the Level I discovery control plan set forth in Rule 190.2 of the Texas Rules of Civil Procedure. Therefore, Plaintiffs intend to conduct discovery, if necessary, under Level II, pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

## C. JURISDICTION

10.     The amount in controversy exceeds this Court's minimum jurisdictional requirement.  Defendants seek attorney's fees and expenses based on settlement monies paid, or that will be paid, for the claims of Plaintiffs' clients into the QSF, which is domiciled and administered in Nueces County, Texas.  Plaintiffs contend Defendants are entitled to no share of the funds paid pursuant to the GMB Settlement Agreement and seek attorney's fees, as recoverable under the TUDJA.

11.     Although not all Defendants are Texas residents, this Court has both general and specific personal jurisdiction over Defendants.  First, Defendants, who are all law firms or attorneys, have had continuous and systematic contacts with Texas, when considering the litigation arising from GMO Rice Litigation (both federal MDL and non-MDL proceedings) and the representation of other Texas clients unrelated to the GMO rice litigation. Second, Defendants have purposefully availed themselves to the privilege of conducting business in Texas, continue to conspire to commit acts affecting Texas residents, and have committed acts

outside of Texas that have reasonably foreseeable consequences in Texas. Defendants have sufficient minimum contacts with Texas to confer jurisdiction on Texas courts, including but not limited to:

      a.     Contracting for the legal representation of Texas clients;

      b.     Requesting the creation of a common benefit fund (related to Plaintiffs' Texas clients and the Texas clients of other attorneys governed by the federal MDL proceeding) and then requesting a distribution of $72 million in attorney's fees, some of which originated from the recoveries of Plaintiffs' Texas clients and other attorney's Texas clients governed by the federal MDL proceeding;

      c.     Authorizing, employing, and/or directing agents, including, but not limited to, other Texas attorneys, to perform legal services on behalf of federal MDL clients, some of which are Texas clients, and then seeking recovery of attorney's fees performed by these Texas law firms as "common benefit" work;

      d.     Maintaining a website, www.bayerricelitigation.com, to solicit clients from Texas and other states in the federal MDL proceeding and in the pendant non-MDL state proceedings;

      e.     Seeking payment from Texas attorneys, including Plaintiffs, arising out of the representation of Texas clients who fell within and outside the federal MDL proceeding; Defendants purposefully availed themselves of the privilege of conducting activities within Texas and seek monetary benefit from those activities.

      f.     Defendants sought intervention into Plaintiffs' cases pending in the state courts of Arkansas and Louisiana. After seeking intervention, Defendants threatened to sue Texas lawyers seeking an award for the payment of attorney's fees from Plaintiffs' QSF, which

specifically sets forth that all disputes over disbursements from that QSF be adjudicated in Nueces County, Texas.

12.     Further, diversity does not exist because two Plaintiffs – Goldman Phipps PLLC and Mikal C. Watts, PC – are Texas citizens and Defendant Looper Reed & McGraw is a Texas citizen.

### D. VENUE

13.     Venue is proper in Nueces County, Texas pursuant to the general venue rule, Texas Civil Practice & Remedies Code § 15.002 because it is the county in which all or a substantial part of the events giving rise to the action have occurred. The attorney's fees and expenses sought by Defendants are based on settlement monies paid, or that will be paid, into Plaintiffs' QSF that is domiciled and administered in Nueces County, Texas. The QSF also has a mandatory venue provision setting venue in the County Courts of Law in Nueces County for any dispute involving distributions from the fund.

### E. BACKGROUND FACTS

14.     Plaintiffs have represented over one thousand rice farmers and operations in the GMO Rice Litigation against Bayer and other defendants.   The litigation arose from the contamination of the United States long grain rice supply with Bayer's genetically modified rice.

15.     After nearly five (5) years of litigation with Bayer, two separate settlement agreements were executed on July 1, 2011, to resolve remaining claims of rice farmers and their operations for damages resulting from Bayer's contamination of the United State rice supply with its genetically modified rice.   One agreement is the GMB Settlement Agreement, which governs the claims of rice farmers, including those with lawsuits filed in state courts, represented by Plaintiffs and separate from the federal MDL litigation. *Exh.A.* Plaintiffs and Bayer are parties to

the GMB Settlement Agreement. The second, separate agreement is the MDL Settlement Agreement, which governs the claims of rice farmers who had lawsuits pending in the separate federal MDL litigation.[1] Defendants and Bayer are parties to the MDL Settlement Agreement.

## F. THE DISPUTE

16.    Although they have no client contracts with the clients whose claims were settled via the GMB Settlement Agreement and although there were not party to the GMB Settlement Agreement, Defendants have claimed an interest in the proceeds of the GMB Settlement Agreement and the funds distributed (and that will be distributed) through the subject QSF. Plaintiffs contend Defendants have no right to any of the recoveries received under the GMB Settlement Agreement and distributed through the subject QSF.  This suit is brought to obtain a declaratory judgment declaring the rights of the parties, or lack thereof, to attorney's fees and/or expenses from the GMB Settlement Agreement and QSF.   Specifically, Plaintiffs seek a declaration that the Defendants have no right to any attorney's fees and/or expenses arising from the GMB Settlement Agreement, whose funds are distributed from the subject QSF. Plaintiffs also seek a declaration that Defendants are precluded from any other related relief potentially sought by them related to the GMB Settlement Agreement and subject QSF.

## G. PRAYER

WHEREFORE, Plaintiffs respectfully request that it recover judgment in the following manner:

a.    Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, make a determination as to the rights of the parties to attorney's fees and/or expenses distributed from

---

[1] In her Order dated February 24, 2010, Judge Perry acknowledged she does not have jurisdiction over the funds paid by Bayer for settlements and judgments in state court cases.  2010 WL 716190, *1 (E.D. Mo. Feb. 24, 2010).

Plaintiffs' QSF, and specifically declare that Defendants have no right or claim to any relief with respect to attorney's fees and/or expenses distributed from Plaintiffs' QSF, and further precluding any other possible relief sought from Plaintiffs by Defendants;

b.    Award reasonable, necessary, equitable, and just attorney's fees and litigation costs incurred by Plaintiffs in bringing this cause of action as authorized by Chapter 38 of the Texas Civil Practice and Remedies Code and/or Chapter 37 of the Texas Civil Practice and Remedies Code; and

c.    Any such other and further relief, general and special, legal and equitable, to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

LAW OFFICES OF RICK HOLSTEIN
410 Peoples Street
Corpus Christi, Texas 78401
Phone: (361) 883-8649
Fax: (361) 883-3199

By: _____
     RICK HOLSTEIN
     State Bar No. 09915150

BARRY SNELL
State Bar No. 18789000
LAW OFFICES OF BAYNE, SNELL & KRAUSE
8626 Tesoro Drive
Suite 500
San Antonio, Texas 78217
Phone: (210) 824-3278
Fax: (210) 824-3937

*ATTORNEYS FOR PLAINTIFF*
*GOLDMAN PHIPPS, PLLC*

9

**HARTLINE DACUS BARGER DREYER LLP**
800 North Shoreline Blvd.
Suite 2000, North Tower
Corpus Christi, Texas 78401
Phone: (361) 866-8000
Fax: (361) 866-8039

By: _____
DARRELL L. BARGER
State Bar No. 01733800

*ATTORNEY FOR PLAINTIFF*
*MIKAL C. WATTS, PC*

**CANALES & SIMONSON, P.C.**
2601 Morgan Ave.
Corpus Christi, Texas 78405
Phone: (361) 883-0601
Fax: (361) 884-7023

By: _____
J.A. "TONY" CANALES
State Bar No. 03737000

Hector Canales
State Bar No. 24006951

*ATTORNEYS FOR PLAINTIFF*
*MURRAY LAW FIRM*

10

# Exhibit A

## GMB SETTLEMENT AGREEMENT

This Agreement, dated as of the Execution Date, is entered into by and among (i) Bayer, (ii) each of Goldman, Pennebaker and Phipps , P.C. ("GPP"), Mikal C. Watts, P.C. ("MCWPC"), Chuck Banks ("Banks") and the Murray Law Firm ("Murray") (collectively referred to herein as "GMB") and (iii) each GMB Client who is bound by this Agreement according to its terms. This Agreement establishes a program to resolve the Claims that Eligible Claimants have asserted, or could have asserted, by any GMB Client (other than the Excluded Trial Claimants, whose claims may have been settled under one or more separate settlement agreements, subject to the mutual written agreement of the Persons who would be parties thereto), arising out of the presence of Bayer GM Rice Seed in the supply of rice in the United States, and to settle any and all such Claims. For the avoidance of doubt, the Program will not settle (i) the Claims of any GMB Client who does not submit an Enrollment and Claims Package, (ii) lawsuits similar to the State Claims filed in various federal courts, which are consolidated in the *MDL Litigation*, (iii) the claims of any Excluded Trial Claimant, or (iv) Claimants not represented by GMB. All capitalized terms herein shall have the meanings ascribed to them, respectively, either where they are first used or in Article 1 below.

### RECITALS

WHEREAS, GMB and Bayer have agreed to establish a structured private settlement program, as set forth herein, to resolve Claims against Bayer (the "Program").

WHEREAS, the Program is intended to resolve, in lieu of litigation (or further litigation), the Claims of all Eligible Claimants who participate in the Program.

1

WHEREAS, each Eligible Claimant is advised to consult an attorney of his choice regarding the Program.

WHEREAS, a key objective of the Program is that all Eligible Claimants shall be entitled to enroll in the Program.

WHEREAS, an essential element of the Program is that the Program, combined with the settlement documented in the MDL Program, is part of a comprehensive effort to resolve claims arising from Bayer GM Rice Seed with an aggregate limit on total payments.

NOW, THEREFORE, in consideration of the mutual promises, agreements, and covenants contained herein, and in exchange for the payment or exchange of good and valuable consideration as set forth below, the receipt and sufficiency of which hereby are acknowledged by the parties, the parties agree as follows:

## Article 1 – Definitions

"Additional Released Parties" has the meaning set forth in the Release attached hereto as Exhibit D.

"Administrative Expenses" has the meaning set forth in Section 5.1.1.

"Affiliated Claimant" has the meaning set forth in Section 2.3.2.3.

"Aggregate Payments" has the meaning set forth in Section 5.2.4.1.

"Agreement" and "Settlement Agreement" means this Settlement Agreement, including any and all Exhibits and Schedules attached hereto, as the same may be amended or modified from time to time in accordance with the terms hereof.

"Amount Over the Cap" has the meaning set forth in Section 5.5.2.

"Arbitrator" has the meaning set forth in Section 6.1.3.

"Average Aggregate Applicable Acreage" has the meaning set forth in Section 3.1.1.1.

"Average Claimed Acreage" has the meaning set forth in Section 3.1.1.1.

2

"Award" has the meaning set forth in Section 4.3.5.

"Award Information" has the meaning set forth in Section 12.1.

"Banks" has the meaning set forth in the Preamble.

"Bayer" means, collectively, Bayer CropScience LP, Bayer CropScience Holding Inc., Bayer CropScience Inc., Bayer CropScience LLC, Stoneville Pedigreed Seed Company, Bayer Corporation, Bayer AG, Bayer CropScience AG, Bayer BioScience NV, Bayer CropScience Holding SA, and Bayer CropScience SA.

"Bayer GM Rice Seed" means rice genetically engineered to be resistant to glufosinate ammonium developed by Bayer or its predecessors containing the following Bayer events: LLRice 06, LLRice 62, LLRice 601, or LLRice 604.

"Bayer Released Party" and "Bayer Released Parties" have the meanings set forth in the Release attached hereto as Exhibit D.

"Business Day" means any day other than a Saturday, a Sunday, or a day on which banking institutions in New York City, New York, are authorized or obligated by law or executive order to remain closed.

"Cap" means the Cheniere/CL-131 Losses Cap, the Other Losses Cap, and/or the Overall Cap, as the context may require.

"Cheniere" means long-grain rice seed that has been certified, or is derived from seed that has been certified, by a state certifying agency as either certified, registered, or foundation seed of the Cheniere variety.

"Cheniere/CL-131 Claims Form" means a claim form containing the substance of Exhibit A-2.

"Cheniere/CL-131 Claims Package" means (i) a claims form containing (y) the substance of Exhibit A-2, which shall contain information in support of an Eligible Claimant's claims for Cheniere/CL-131 Losses and (z) Wire Instructions for use by the QSF Administrator in connection with any Settlement Payment to be made to such Eligible Claimant subject to and in accordance with the terms of this Agreement and the Qualified Settlement Fund Agreement, and (ii) all requisite supporting documentation as further described in Exhibit Y attached hereto.

"Cheniere/CL-131 Claims Package Cure Deadline Date" means the sixtieth (60th) day following receipt of notice that the corresponding Claims Package was Materially Delinquent or Deficient.

"Cheniere/CL-131 Claims Package Deadline Date" means the later of the one-hundred-twentieth (120th) day following the Execution Date or the thirtieth (30th) day following the Effective Date unless extended by written agreement of the parties, but, in any event, no earlier than the Cheniere/CL-131 Claims Package Deadline Date as such term is defined in the MDL Settlement Agreement.

"Cheniere/CL-131 Formula" or "Formula" has the meaning set forth in Section 5.3.2.

"Cheniere/CL-131 Fund" has the meaning set forth in Section 5.3.8.

"Cheniere/CL-131 Losses" has the meaning set forth in Section 5.3.

"Cheniere/CL-131 Losses Cap" has the meaning set forth in Section 5.3.3.

"Cheniere/CL-131 Losses Payment" has the meaning set forth in Section 5.3.

"CL-131" means long-grain rice seed that has been certified by a state certifying agency as either certified, registered, or foundation seed of the Clearfield 131 variety.

"Claimed Acreage" has the meaning set forth in Section 3.1.1.1.

"Claims" means any (i) unfiled claims, actions or proceedings, or (ii) claims, actions or proceedings filed in state or federal court, in each case arising out of the presence of Bayer GM Rice Seed in the supply of rice in the United States, but excluding any claims, actions or proceedings that constitute part of the MDL Litigation and/or were or could have been filed by (y) any of the Excluded Trial Claimants and (z) any Person who is an Eligible Claimant under the MDL Settlement Agreement.

"Claims Administrator" means the Person appointed by Bayer and GMB, initially BrownGreer PLC, to fulfill the functions of the "Claims Administrator" set forth in this Agreement (for so long as such Person or Persons continues to serve in such capacity). Any successor to the initial Claims Administrator shall fulfill the same functions from and after the date of his succession and shall be bound by the determinations made by his predecessor(s) to date. The Person who serves as the Claims Administrator under this Agreement shall be the same Person who serves in such capacity under the MDL Settlement Agreement.

"Claims Package" means, as the context requires, an Enrollment and Claims Package, a Cheniere/CL-131 Claims Package, or a Supplemental Claims Package.

"Completed Claims Package" means, as the context requires, a Completed Enrollment and Claims Package, a Completed Cheniere/CL-131 Claims Package, or a Completed Other Losses Claims Package.

"Completed Enrollment and Claims Package" means a package containing a completed Enrollment and Claims Form, all requisite Releases, all requisite Stipulations of Dismissal (if and as applicable), together with such other information or materials as may have been required by the Claims Administrator that has been timely submitted and accepted, or that has not been timely rejected, by the Claims Administrator and that is not then the subject of any appeal or suspended in accordance with the terms hereof.

"Completed Cheniere/CL-131 Claims Package" means a package containing a Cheniere/CL-131 Claims Form together with such other information or materials as may have been required by the Claims Administrator that has been timely submitted and accepted, or that

4

has not been timely rejected, by the Claims Administrator and that is not then the subject of any appeal or suspended in accordance with the terms hereof.

"Completed Other Losses Claims Package" means a package containing an Other Losses Claims Form together with the documentation required to substantiate an Other Losses Claim that has been timely submitted and that is not then the subject of any appeal or suspended in accordance with the terms hereof.

"Counsel" means, with respect to any particular Person, a lawyer or law firm who represents such Person, provided that, for all purposes of this Agreement, the "Counsel" of any particular Eligible Claimant shall be the lawyer or law firm named as such in such Eligible Claimant's Enrollment and Claims Package, except to the extent that Counsel for Duplicative Claims is determined by Section 2.17.

"Court" has the meaning set forth in Section 6.4.1.

"Duplicative Claim" means a claim for Market Losses, Cheniere/CL-131 Losses and/or Other Losses with respect to the same Interest, in whole or in part, as to which more than one Claims Package has been submitted, whether under this Agreement or the MDL Agreement.

"Effective Date" has the meaning set forth in Section 3.2.3.

"Eligible Claim" means a claim for Market Losses, Cheniere/CL-131 Losses and/or Other Losses with respect to which an Eligible Claimant timely has submitted a Completed Claims Package.

"Eligible Claimant" means any GMB Client (i) who has an Interest in a crop of long-grain rice as reflected in FSA Form 578 alleged to have been affected by the presence of Bayer GM Rice Seed in the supply of rice in the United States, (ii) who, as of the Enrollment and Claims Form Deadline Date, has not filed a claim, action or proceeding in federal court arising out of the presence of Bayer GM Rice Seed in the supply of rice in the United States, and (iii) who, as of the Enrollment and Claims Form Deadline Date, is not an Excluded Trial Claimant.

"Enrolled Claimant" or "Claimant" means (y) an Eligible Claimant who timely has submitted (or on whose behalf timely has been submitted) to the Claims Administrator a Completed Enrollment and Claims Package on or prior to the applicable deadline; and (z) any Affiliated Claimant identified in any such Completed Enrollment and Claims Package. For the avoidance of doubt, a Counsel to an Enrolled Claimant or to an Affiliated Claimant is not (in such capacity) an "Enrolled Claimant."

"Enrolling Counsel" means any lawyer or law firm who files an Enrollment and Claims Package on behalf of an Eligible Claimant.

"Enrolling Counsel Declaration" means a declaration in the form attached hereto as Exhibit B.

"Enrollment and Claims Form" means a claim form containing the substance of Exhibit A-1, which shall (i) reflect the Eligible Claimant's agreement to enroll in the Program and be

5

bound by the terms of this Agreement, (ii) contain information in support of an Eligible Claimant's claims for Market Losses, including the number of acres farmed from January 1, 2006 through and including December 31, 2010, (iii) be accompanied by supporting FSA 578 forms, and (iv) if the Eligible Claimant seeks to receive payments other than Market Loss Payments, state whether the Eligible Claimant intends to make a claim on the Cheniere/CL-131 Fund, or, instead intends to submit a Supplemental Claim Form in respect of Other Losses, provided that the Claimants shall have the time until the Cheniere/CL-131 Claims Package Deadline Date or the Other Losses Claims Package Deadline Date, as applicable, to make a final determination as to which program, if any, the Claimant will participate in. The parties may agree on a different format of the Enrollment and Claims Form to make it more efficient to complete, review, and process claims.

"Enrollment and Claims Package" means the applicable Enrollment and Claims Form, any requisite Release(s), any requisite Landlord Consent and Instruction to Pay Tenant Form, any requisite Stipulation(s) of Dismissal, and an Enrolling Counsel Declaration to the extent required, as they appear in the Exhibits to this Agreement unless otherwise approved by Bayer.

"Enrollment and Claims Package Cure Deadline Date" means the sixtieth (60th) day following receipt of notice that the corresponding Claims Package was Materially Delinquent or Deficient unless extended by written agreement of the parties or as otherwise set forth in Section 3.2.2.1 of the Agreement.

"Enrollment and Claims Package Deadline Date" means the ninetieth (90th) day after the Execution Date unless extended by written agreement of the parties or as otherwise set forth in Section 2.10 of the Agreement, but, in any event, no earlier than the Enrollment and Claims Package Deadline Date as such term is defined in the MDL Settlement Agreement.

"Excluded Trial Claimants" means those Persons who have obtained a verdict or settlement prior to the Execution Date of this Agreement and are excluded from the determination of the Overall Cap and Average Claimed Acreage under this Agreement. Excluded Trial Claimants are identified in Exhibit H.

"Execution Date" means the last date on which this Settlement Agreement is executed by the parties, as stated within the signature blocks below, but, in any event, no earlier than (y) the last date on which the MDL Settlement Agreement is executed by any of the parties thereto, as stated within the signature blocks to that agreement and (z) the date that notice is received from the Claims Administrator indicating that a website capable of full data entry and form generation for Market Losses and Cheniere/CL-131 Losses is operational.

"Expenses Report" has the meaning set forth in Section 5.1.2.

"Final Cheniere/CL-131 Payment List" has the meaning set forth in Section 5.3.6.

"Final Enrolled Claimant Payment List" has the meaning set forth in Section 5.2.4.

"Final Summary Report" has the meaning set forth in Section 5.2.2.

"FSA Form 578" means FSA Form(s) 578 Reports of Acreage or Reports of Commodities that provide information sufficient to identify the Interests on a field-by-field level of an Enrolled Claimant and any Affiliated Claimant.

"Funding Payment" has the meaning set forth in Article 5.

"GMB" has the meaning set forth in the Preamble.

"GMB Amount Over the Cap" has the meaning set forth in Section 5.5.2.

"GMB Client" means each Person represented by any of GPP, MCWPC, Banks and Murray as of the Enrollment and Claims Package Deadline Date in respect of any (i) unfiled claims, or (ii) claims filed in state court in each case arising out of the presence of Bayer GM Rice Seed in the supply of rice in the United States, excluding the Excluded Trial Claimants and any Person whose claims are pending only in a federal court.

"GMB Pre-Cap Amount" has the meaning set forth in Section 5.5.2.

"GPP" has the meaning set forth in the Preamble.

"Included Trial Claimants" means those Persons, other than Excluded Trial Claimants, who have obtained a verdict or settlement prior to the Execution Date of this Agreement whose acres are included in the determination of the Overall Cap and the Average Claimed Acres under this Agreement. Included Trial Claimants are identified in Exhibit I.

"Initial Market Losses Payment List" has the meaning set forth in Section 5.2.3.

"Interest," when used in connection with acreage, means a financial interest in the revenue from planting a crop, as reflected on an existing FSA 578 form, including, without limitation, rent based on a share of the crop. Landlords who receive only a fixed cash amount for renting the land that does not vary with the size of, or pricing for, the crop do not have Interests in a crop. Creditors who are not reflected on an existing FSA 578 form do not have Interests in a crop.

"Landlord Consent and Instruction to Pay Tenant Form" means a document in the form attached hereto as part of Exhibit A-1.

"Liabilities" means any and all debts, liabilities, covenants, promises, contracts, agreements and/or obligations of whatever kind, nature, description or basis, whether fixed, contingent or otherwise, whether presently known or unknown, developed or undeveloped, discovered or undiscovered, foreseen or unforeseen, matured or unmatured, or accrued or not accrued.

"Lien" means any lien, claim, mortgage, hypothecation, encumbrance, assignment, subrogation right, third-party interest or adverse claim of any nature whatsoever, pledge, security interests or charges of any kind, in each case whether statutory or otherwise, expressly excluding common benefit claims from this definition.

7

"Market Losses" has the meaning set forth in Exhibit X attached hereto.

"Market Losses Payment List" means, as the context requires, any of the Initial Market Losses Payment List and/or any Supplemental Market Losses Payment List.

"Market Losses Payments" has the meaning set forth in Exhibit X attached hereto.

"Material Delinquency or Deficiency" means (a) the absence of any information necessary to determine (i) whether or not a Person is entitled to any benefits, directly or indirectly, under this Agreement, and/or (ii) the amount of any benefits that any Person is entitled to, directly or indirectly, under this Agreement; (b) the absence of a proper signature by any Eligible Claimant, Affiliated Claimant, or Witness on any Release or Enrollment and Claims Form; (c) the absence of any required signature on any required Stipulation of Dismissal, (d) the absence of any required signature on, or accompanying information with respect to, any required Enrolling Counsel Declaration; (e)  the absence of any required document; or (f) any alteration, deletion, or addition to the terms set forth in Exhibit A-1, Exhibit B, or Exhibit D, as applicable. A Claims Package that is "Materially Delinquent or Deficient" has a Material Delinquency or Deficiency.

"MCWPC" has the meaning set forth in the Preamble.

"MDL Litigation" means, collectively, those cases pertaining to Bayer GM Rice Seed that (i) are pending in federal court, (ii) have been removed to federal court and not remanded, or (iii) have been consolidated by the Multi-District Litigation Panel before Hon. Catherine Perry, United States District Court for the Eastern District of Missouri, Eastern Division, MDL 06-1811.

"MDL Program" has the meaning set forth in Section 3.1.1.1.

"MDL Settlement Agreement" means that certain settlement agreement entered into by and among Bayer, on the one hand, and the counsel listed on the signature pages thereto under the heading "Negotiating Claimants' Counsel."

"Minimum Amount Due" has the meaning set forth in Exhibit X attached hereto.

"Murray" has the meaning set forth in the Preamble.

"NCC" means the signatories to the MDL Settlement Agreement.

"NCC Amount Over the Cap" has the meaning set forth in Section 5.5.2.

"NCC Pre-Cap Amount" has the meaning set forth in Section 5.5.2.

"Non-Appealable" means not subject to (i) any further right of appeal to any Arbitrator or otherwise within the Program or (ii) any right of appeal to any court.

"Notice of Appeal" has the meaning set forth in Section 2.9.4.1.

"Notice of Preliminary Award" has the meaning set forth in Section 4.3.5.

"Order" has the meaning set forth in Section 6.4.1.

"Original Deposit" has the meaning set forth in Section 5.4.8.

"Other Losses" has the meaning set forth in Exhibit Z.

"Other Losses Cap" means $50 million, unless reduced in accordance with Section 3.2.2.3.

"Other Losses Fund" has the meaning set forth in Section 5.4.1.

"Overall Awards" has the meaning set forth in Section 5.5.2.

"Overall Cap" has the meaning set forth in Section 5.5.2.

"Penn Trial Entities" has the meaning set forth in Section 2.1.

"Person" means a natural person, corporation, limited liability company, other company, trust, joint venture, association, partnership, or other enterprise or entity, or the legal representative of any of the foregoing.

"Pre-Cap Total" has the meaning set forth in Section 5.5.2.

"Preliminary Cheniere/CL-131 Payment List" has the meaning set forth in Section 5.3.2.

"Prevailing Party" means, with respect to a determination that is appealed to the Arbitrator in accordance with the terms of this Agreement, the Person whose position prior to the appeal was closest to the Arbitrator's ruling. For illustration, if an Enrolled Claimant files a Notice of Appeal under Section 4.2.1.9 because the Claims Administrator rejected a Claims Package in part, the Enrolled Claimant will be the Prevailing Party if the Arbitrator finds that more of the Claims Package should not have been rejected than should have been rejected. If the Arbitrator finds that most of the Claims Package should have been rejected, Bayer will be the Prevailing Party. For further illustration, under the Other Losses Fund, if the Enrolled Claimant makes a claim for Other Losses of $100,000, Bayer states it is willing to pay $50,000, and the Arbitrator rules that the Enrolled Claimant is entitled to $74,999, then Bayer will be the Prevailing Party. If the Arbitrator finds that the Enrolled Claimant is entitled to $75,001, then the Enrolled Claimant will be the Prevailing Party. In any event where the Arbitrator's Award is exactly between the parties' positions, then the parties to the arbitration share equally in the costs incurred and there is no Prevailing Party.

"Producer" means an owner, operator, landlord, waterlord, tenant, or sharecropper, who shares in the risk of producing a long-grain rice crop and who is entitled to share in the long-grain rice crop available for marketing from the farm, as reflected in FSA Form 578. A landlord

9

who receives only a fixed cash amount for renting the land that does not vary with the size of, or pricing for, the crop is not a Producer.

"Program" has the meaning set forth in the Preamble.

"Program Claim" means any claim as to which a Completed Claims Package timely has been submitted in accordance with the terms of this Agreement.

"Qualified Settlement Fund" means the qualified settlement fund established in accordance with the terms of Section 6.4.1 and Exhibit F attached hereto.

"Qualified Settlement Fund Agreement" means the agreement governing distributions of monies deposited into the Qualified Settlement Fund attached hereto as Exhibit F.

"QSF Administrator" refers to the Person who will function as the QSF Administrator (as such term is defined in the Qualified Settlement Fund Agreement attached hereto as Exhibit F).

"Release" means a release in the form attached hereto as Exhibit D.

"Review Period" has the meaning set forth in Section 2.9.1.

"Settlement Payment" means any payment made into the Qualified Settlement Fund for the benefit of a Claimant under this Agreement, whether for Market Losses, Cheniere/CL-131 Losses or Other Losses.

"Settlement Threshold" has the meaning set forth in Section 3.1.1.

"Settling Claimant" has the meaning set forth in the Release attached hereto as Exhibit D.

"Settling Claimant Released Claims" has the meaning set forth in the Release attached hereto as Exhibit D.

"Settling Claimant Releasing Party" and "Settling Claimant Releasing Parties" has the meaning set forth in the Release attached hereto as Exhibit D.

"Stipulation of Dismissal" means a "Stipulation of Dismissal," "Proposed Order" or such other document required by the local practice of the court in which a case in pending consistent with the form of Exhibit E or in such other form as is mandated by the Enrollment and Claims Form that serves the purpose of dismissing with prejudice any and all claims brought by or on behalf of the settling party or parties.

"Summary Report" has the meaning set forth in Section 5.2.1.

"Other Losses Claims Form" means that additional claim form, in the form of Exhibit A-3 attached hereto, that must be filed to make a claim from the Other Losses Fund, pursuant to the criteria outlined in Exhibit Z attached hereto.

"Other Losses Claims Package" has the meaning set forth in Section 4.2.2.1.

"Other Losses Claims Package Deadline Date" means the later of the one hundred fiftieth (150th) day following the Execution Date or the sixtieth (60th) day following the Effective Date, unless extended by written agreement of the parties, but, in any event, no earlier than the Other Losses Claims Package Deadline Date as such term is defined in the MDL Settlement Agreement.

"Other Losses Claims Package Negotiation Deadline Date" means as to any applicable Other Losses Claims Package, the sixtieth (60th) day following receipt by an Enrolled Claimant of notice from Bayer that it disagrees with the Claim reflected in such Claimant's Other Losses Claims Package.

"Supplemental Market Losses Payment List" has the meaning set forth in Section 5.2.3.

"Third Party Payer/Provider" has the meaning set forth in Section 10.7.1.

"Total Other Losses" has the meaning set forth in Section 5.4.7.

"Walk Away Deadline" has the meaning set forth in Section 3.1.

"Walk Away Period" has the meaning set forth in Section 3.1.

"Walk Away Right" has the meaning set forth in Section 3.1.

"Wire Instructions" means preliminary wire or other payment instructions, subject to revision by the Enrolled Claimant prior to transfer of funds.

"Witness" means the person witnessing the signature of the Release and providing a proper signature and information regarding such signature.

### Article 2 – Enrollment and Market Losses Claims

2.1    Only Eligible Claimants may enroll in the Program.  Included Trial Claimants may not participate in the Program unless the terms of any prior settlement agreement and/or the balance of this Section 2.1 specifically permits such enrollment.

2.2    Bayer will not conduct a public relations campaign for the purpose of encouraging unrepresented claimants to participate in the Program without counsel.  Bayer may, in any communications directed toward Eligible Claimants, provide notice that the Program has been established.  Bayer shall make reasonable efforts to ensure that any such communications shall state that Eligible Claimants who are not represented by counsel are encouraged to consult with an attorney regarding the Program and may, at any time, obtain legal counsel in connection with this Agreement.  Such Persons promptly shall notify Bayer and the Claims Administrator in the event counsel is engaged and provide the name and contact information for such counsel.  An Eligible Claimant who is represented by counsel shall identify such counsel in his Enrollment and Claims Package.

11

2.3     In order for an Eligible Claimant to participate in the Program, on or before the Enrollment and Claims Package Deadline Date or Enrollment and Claims Package Cure Deadline Date, such Eligible Claimant must deliver to the Claims Administrator as to any and all of such Eligible Claimant's Interests (only if controlled directly or indirectly, including through delegation or assignment of control by other owners) (i) an Enrollment and Claims Form and any requisite supporting documentation (including the applicable FSA Form 578s), (ii) any and all requisite Releases (i.e., a Release executed by the Eligible Claimant, or, if not a natural person, or if deceased or incompetent, by a duly authorized person as well as a Release executed by any Affiliated Claimant, or, if not a natural person, or if deceased or incompetent, by a duly authorized person), (iii) if a claim has been filed by the Eligible Claimant or any Affiliated Claimant in a court of law, a Stipulation of Dismissal, all properly and fully completed, and properly and fully executed by the various Persons specified therein, not later than the Enrollment and Claims Package Deadline Date or Enrollment and Claims Package Cure Deadline Date and (iv) any requisite supporting documentation called for in Exhibit X attached hereto.  With the sole exception of a landlord participating directly for Market Losses and as an Affiliated Claimant for Cheniere/CL-131 Loss Claims or Other Loss Claims, an Eligible Claimant must enroll all of its Interests in the Program and by enrolling is releasing all of its Interests whether enrolled or not.  By way of example only, if an Eligible Claimant is a natural person with Interests but also controls a company that has Interests, both the natural person and the company must submit Claims Packages and if the company does not submit a Claims Package, any effort to bring a lawsuit by the company will be barred by the Eligible Claimant's Release.

2.3.1   The Enrollment and Claims Form for an Eligible Claimant must be submitted on his behalf by his Enrolling Counsel and be accompanied by an Enrolling Counsel Declaration.  (For the avoidance of doubt, references herein to Enrollment and Claims Forms submitted "by" an Eligible Claimant shall be deemed to include Enrollment and Claims Forms so submitted on behalf of such Eligible Claimant.)

2.3.2   The Enrollment and Claims Form shall:

2.3.2.1     indicate the long-grain rice crop acreage for which the Eligible Claimant is seeking Settlement Payments;

2.3.2.2     attach all FSA Forms 578 reflecting the Eligible Claimant's Interest in that same crop;

2.3.2.3     identify any additional Person having an Interest in the acreage reflected in the submitted FSA Forms 578 and who has permitted Settlement Payments to be made on his or her behalf to the Eligible Claimant as supported by a Release and a Landlord Consent and Instructions to Pay Tenant Form executed by such Person (each an "Affiliated Claimant");

12

2.3.2.4   include a representation by the Eligible Claimant that the Eligible Claimant is not aware of any other Person, not listed on each such FSA Form 578, who has an Interest in the crop;

2.3.2.5   include an agreement that in the event more than one Claims Package is filed for the same acreage (whether under this Program or the MDL Program) (i) any disputes as to which Claims Package shall be the prevailing Claims Package and/or under which program the Eligible Claimant's claims should be considered shall be resolved according to Section 2.17 below, and (ii) the Claims Administrator shall suspend further consideration of such Duplicative Claims under either this Agreement or the MDL Settlement Agreement (except for determining the Interest in acres in order to determine whether the Settlement Threshold has been met) until the matter has been resolved in accordance with Section 2.17 below;

2.3.2.6   include Wire Instructions for use by the QSF Administrator in connection with any Settlement Payment to be made to such Eligible Claimant in respect of Market Losses, subject to and in accordance with the terms of this Agreement and the Qualified Settlement Fund Agreement; and

2.3.2.7   include a statement as to whether the Claimant intends to seek additional compensation for Cheniere/CL-131 Losses or Other Losses and, if so, which one the Claimant intends to seek, provided that the Claimants shall have the time until the Cheniere/CL-131 Claims Package Deadline Date or the Other Losses Claims Package Deadline Date, as applicable, to make a final determination as to which program, if any, the Claimant will participate in.

2.3.3   Each long-grain rice acre for which an Eligible Claimant intends to submit an Enrollment and Claim Form must be reflected in a FSA Form 578 that accompanies an Enrollment and Claims Package. An Eligible Claimant may only seek recovery for (y) its share, as reflected on the FSA Form(s) 578, of any long-grain rice acre, and (z) the share of such acreage, as reflected on the FSA Form(s) 578, of any Affiliated Claimant. In the event that the long-grain rice acreage reflected on any FSA Form(s) 578 for any relevant time is adjusted or revised due to the Eligible Claimant or Affiliated Claimant not providing true and accurate information, the lowest figure from the original or any revised FSA Form(s) 578 shall be used to calculate any recovery. For avoidance of doubt, a landlord may be an Enrolled Claimant for Market Losses, so long as that landlord complies with all requirements, as well as an Affiliated Claimant for Cheniere/CL-131 Losses or Other Losses, so long as the Enrolled Claimant and Affiliated Claimant comply with all requirements. Under no

13

circumstances may the same Interest in a crop participate both in the Cheniere/CL-131 Losses Fund and the Other Losses Fund. To avoid double counting of claims, the Settlement Threshold shall be calculated by examining the Interest claimed in a long-grain rice crop by acres for Market Losses only.

2.3.4   Enrollment and Claims Forms and all Releases must be properly and fully executed by the Eligible Claimants themselves or, if not a natural person or if deceased or incompetent, by a duly authorized representative (in addition to being executed by Enrolling Counsel, if the Eligible Claimant is represented by counsel, as specified therein). As to Affiliated Claimants, all Releases and all Directions of Payment must be properly and fully executed by the Affiliated Claimants themselves or, if not a natural person or if deceased or incompetent, by a duly authorized representative. Stipulations of Dismissal shall be executed by Enrolling Counsel for the Eligible Claimants and for the Affiliated Claimants, or by the Eligible Claimant or the Affiliated Claimant himself (or, if such Eligible Claimant or Affiliated Claimant is not a natural person or is deceased or incompetent, by a duly authorized representative), if not represented by counsel (other than Eligible Claimants or Affiliated Claimants who do not have a lawsuit pending against Bayer related to the presence of Bayer GM Rice Seed in the U.S. rice supply). Enrolling Counsel Declarations shall be executed by Enrolling Counsel.

2.3.5   All or any portion of any Enrollment and Claims Package may be filed electronically in accordance with such instructions as may be provided by the Claims Administrator from time to time, provided, however, that original Releases must be submitted in hard-copy and not electronically.

2.4   Submission of an Enrollment and Claims Package is irrevocable. No Eligible Claimant may under any circumstances or for any reason withdraw an Enrollment and Claims Package, request the return of any Release or Stipulation of Dismissal, or otherwise unilaterally exit the Program, unless Bayer exercises its rights under Article 3 below (Walk Away Rights) or a court of competent jurisdiction has finally determined Bayer to be in material breach of its obligations under this Agreement. If a court of competent jurisdiction determines Bayer to be in material breach of its obligations under this Agreement, then any Claimant who filed a Stipulation of Dismissal shall have one (1) year from such determination to refile any lawsuit that was dismissed pursuant to a Stipulation of Dismissal. Bayer retains all other defenses to those lawsuits, including any statute of limitations defense based on the original date of filing.

2.5   Each party to this Agreement and, by submitting an Enrollment and Claims Package, Enrolling Counsel and each Eligible Claimant and any Affiliated Claimant covered by such Enrollment and Claims Package, and, by signing the Qualified Settlement Fund Agreement, the QSF Administrator, agrees to be bound by all of the terms and conditions of this Agreement and agrees that authority over

14

the process contemplated by the Program, including any claims for a Settlement Payment submitted under the Program and any return to Bayer of any portion of a Funding Payment required pursuant to this Agreement, resides with those Persons appointed pursuant to this Agreement to exercise that authority, as such authority is specified in this Agreement. Subject to the mandatory procedures for arbitration in this Agreement, any signatory to this Agreement may enforce this Agreement in a court of law.

2.6    On or prior to the Enrollment and Claims Package Deadline Date, Enrolling Counsel shall submit an Enrolling Counsel Declaration listing, with specificity, all Persons whom such Enrolling Counsel represents (x) who are Eligible Claimants and who have filed a claim or proceeding against Bayer in any court of law (including any such Eligible Claims who have not filed a claim under the Program), (y) on whose behalf such Enrolling Counsel has filed a claim under the Program, such list to be organized alphabetically by name and listing, as to each such Person, the number of long-grain rice acres in which such Person had an Interest in each of calendar years 2006, 2007, 2008, 2009 and 2010 and (z) who are Eligible Claimants that are landlords and through that same Enrolling Counsel are seeking to be both Enrolled Claimants for Market Losses and, for the same Interest, Affiliated Claimants for Cheniere/CL-131 Losses or Other Losses.

2.7    Enrolling Counsel shall update any form in which there may be a change in the information required by the form before the Enrollment and Claims Package Deadline Date, or if an Enrollment and Claims Package has been deemed Materially Delinquent or Deficient, by the Enrollment and Claims Package Cure Deadline Date. Only updates regarding contact information and payment instructions may be updated after that date. When an Enrollment and Claims Package has been submitted, it is presumptively complete. After submission, changes that relate to the amount of the claim or the identity of the Eligible Claimant or Affiliated Claimants may only be made prior to the applicable deadlines as set forth above in this Section 2.7 and only with good cause shown. A request for any such change must be made to the Claims Administrator with a copy to Bayer with a statement for the reason for the requested change and the timing of the requested change. Any decision by the Claims Administrator disallowing the change is subject to appeal through the procedures set forth in Section 2.9.4.1.

2.8    Enrolling Counsel may submit on behalf of Eligible Claimants Enrollment and Claims Packages, as well as any updates or corrections to previously submitted Enrollment and Claims Packages, on a rolling basis at any time prior to (y) the Enrollment and Claims Package Deadline Date and the Enrollment and Claims Package Cure Deadline Date, as applicable, or (z) if earlier, the Claims Administrator's determination that an Enrollment and Claims Package is a Completed Enrollment and Claims Package.

2.9    On a rolling basis but within forty-five (45) days of the Enrollment and Claims Package Deadline Date the Claims Administrator shall notify the Eligible

15

Claimant, through his Enrolling Counsel, either (i) that the Enrollment and Claims Package constitutes a Completed Claims Package in accordance with the form attached hereto as Exhibit J-1, or (ii) that the Enrollment and Claims Package is Materially Delinquent or Deficient and has been rejected in whole or in part. The Claims Administrator shall specifically identify all reasons for the determination that the Enrollment and Claims Package is Materially Delinquent or Deficient. The Claims Administrator must process claims quickly; however, if 50% or more of the total Enrollment and Claims Packages (determined by number of packages, not by number of acres represented by those packages) under both agreements are received within fifteen (15) days of the Enrollment and Claims Package Deadline Date, this forty-five (45) day deadline in this Section 2.9 may be extended no more than necessary to complete review of Enrollment and Claims Packages and under no circumstances more than an additional fifteen (15) days. Any Enrollment and Claims Package as to which no such notice timely has been delivered shall be deemed accepted.

2.9.1   An Eligible Claimant who has received a notice that his Enrollment and Claims Package has been rejected shall have sixty (60) days from receipt of such notice to submit a corrected Enrollment and Claims Package. Any corrected Enrollment and Claims Package that has not been rejected on or prior to the twentieth (20th) day after the applicable Enrollment and Claims Package Cure Deadline Date (the "Review Period") shall be deemed accepted as of the end of the corresponding Review Period.

2.9.2   If the Eligible Claimant fails to submit within the sixty (60) day period a corrected Enrollment and Claims Package without Material Delinquency or Deficiency (as determined by the Claims Administrator), such Eligible Claimant may be removed from the Program and rendered ineligible for any Settlement Payments under this Agreement. However, any and all Releases and Stipulations of Dismissal, as applicable, submitted in connection with a Materially Delinquent or Deficient Enrollment and Claims Package shall nonetheless remain in full force and effect and promptly shall be delivered by the Claims Administrator to Bayer (and, without limitation, Bayer shall be free to file or cause to be filed such Stipulation of Dismissal and/or Release in any relevant action or proceeding). A Material Delinquency or Deficiency in an Enrollment and Claims Package due to the omission of, or deficiency in, a Release of an Affiliated Claimant shall not serve as the basis for rejection of the entire Enrollment and Claims Package, but, under Section 2.9.3 below, the portion of the claim for which adequate information has been submitted shall be accepted if otherwise not Materially Delinquent or Deficient.

2.9.3   If the Claims Administrator has determined that an Eligible Claimant has submitted adequate information for some portion of the claim, the Claims Administrator shall accept an Enrollment and Claims Package solely as to that portion of the claims for which adequate information has been

16

submitted so long as there are no Material Delinquencies or Deficiencies related to the portion of the claim adequately submitted.

2.9.4   The Claims Administrator shall process Enrollment and Claims Packages on a rolling basis and shall approve or reject any Enrollment and Claims Package or corrected Enrollment and Claims Package, or any part thereof, as they are submitted.

2.9.4.1   An Eligible Claimant may appeal the Claims Administrator's decision to reject a corrected Enrollment and Claims Package, in whole or in part solely by notifying the Claims Administrator of its intent to appeal (each a "Notice of Appeal") within ten (10) days of receipt of notice of such rejection.

2.9.4.1.1   Within thirty (30) days of the date that the Notice of Appeal is sent to the Claims Administrator or within ten (10) days of receipt of any request from the Arbitrator, whichever is later, the Eligible Claimant shall submit to the Arbitrator and to the Claims Administrator any additional materials in support of his claim as the Eligible Claimant may desire to submit or as may be requested by the Arbitrator.

2.9.4.1.2   The Claims Administrator shall have twenty (20) days following the receipt by both the Claims Administrator and the Arbitrator of materials submitted in accordance with 2.9.4.1.1 above to respond to the appeal and submit relevant documentation.

2.9.4.1.3   The Arbitrator shall rule on each appeal within thirty (30) days of the deadline established pursuant to Section 2.9.4.1.2 above and, in the event no response is filed, the Arbitrator shall rule on each appeal within thirty (30) days of his receipt of the appeal or, if later, the deadline established pursuant to Section 2.9.4.1.1 above. The ruling of the Arbitrator shall be final, binding, and Non-Appealable.

2.9.4.1.4   If an Eligible Claimant fails to meet the Notice of Appeal deadline in Section 2.9.4.1, its right to appeal shall be extinguished and the Claims Administrator's decision shall be final, binding and Non-Appealable. The Claims Administrator shall consider only those materials that have been timely filed by any party.

17

2.9.4.1.5    If an Eligible Claimant files a Notice of Appeal and the Eligible Claimant is not the Prevailing Party in respect of such appeal as determined by the Arbitrator, the Eligible Claimant shall be liable for the fees and costs of the Arbitrator related to such appeal, which such fees and costs may be deducted from any Settlement Payment to be made with respect to the Eligible Claimant hereunder. Likewise, if an Eligible Claimant files a Notice of Appeal and the Eligible Claimant is the Prevailing Party in respect of such appeal as determined by the Arbitrator, the Eligible Claimant shall not be liable for the fees and costs of the Arbitrator related to such appeal (subject to the balance of the terms of this Section 2.9.4.1.5), rather Bayer shall be so responsible. In any event where the Arbitrator's Award is exactly between the parties' positions, the parties to the arbitration shall share equally in the fees and costs incurred and there is no Prevailing Party. Even if the Enrolled Claimant would otherwise be the Prevailing Party, if the Claimant submits additional material under Section 2.9.4.1.1 then the Arbitrator shall determine (1) whether those submissions materially changed the submission of the Claimant and (2) if so, then the Claimant shall bear all costs and expenses of the arbitration.

2.9.4.2    Upon the completion of all appeals in accordance with the terms of Section 2.9.4.1 above, the Claims Administrator shall make any necessary adjustments in respect of the degree to which the Eligible Claimant's Enrollment and Claims Package will be considered accepted or rejected in accordance with the rulings by the Arbitrator.

2.10    Bayer, in its sole and absolute discretion, may extend the Enrollment and Claims Package Deadline Date, or the Enrollment and Claims Package Cure Deadline Date, upon written notice to GMB (care of Martin Phipps and Mikal Watts)(which such extension also may be communicated in accordance with the terms of Section 2.2 above), but is under no obligation to do so.

2.11    Upon acceptance of an Enrollment and Claims Package (i.e., upon a determination that an Enrollment and Claims Package is a Completed Enrollment and Claims Package), the Eligible Claimant shall become an Enrolled Claimant. An Enrolled Claimant who does not file a Cheniere/CL-131 Claims Package by the Cheniere/CL-131 Claims Package Deadline Date shall have the right, instead,

18

to make a claim on the Other Losses Fund, subject to the timely submission of a Other Losses Claims Form on or before the Other Losses Claims Form Deadline.

2.12  Each Enrollment and Claims Package, including each element thereof, must be submitted on behalf of the Eligible Claimant by his Enrolling Counsel.

2.13  All or any portion of any Enrollment and Claims Package may be filed electronically in accordance with such instructions as may be provided by the Claims Administrator from time to time, provided, however, that original Releases must be submitted in hard-copy and not electronically.

2.14  Bayer and the Claims Administrator (together with its and their respective representatives and others deemed necessary by either Bayer or the Claims Administrator to assist them and/or their representatives) and GMB, will have unlimited access to all Enrollment and Claims Packages, including any related supporting documentation. If any Cap is reached, then the NCC shall also have access to Enrollment and Claims Packages, including any related supporting documentation, provided, however, that the party requesting information shall pay for all costs, including administrative costs, to obtain such information. All parties with such access agree not to disclose any information contained in the Enrollment and Claims Packages, including any related supporting documentation. To the extent any such information is shared with others deemed necessary as permitted above, the person sharing such information shall be required to agree in writing not to disclose such information to anyone not expressly allowed to have access to it under this Agreement.

2.15  Nothing in this Article 2 limits any party's rights or remedies in the event of fraud or other intentional misconduct.

2.16  Enrolled Claimants consent to the disclosure of the communications between themselves and their Enrolling Counsel set forth in the Enrolling Counsel's declaration. Such disclosure does not operate as a waiver of any attorney-client privilege. Bayer agrees not to use such disclosure to argue or claim that any attorney-client privilege has been waived or such protections otherwise weakened.

2.17  In the event more than one Claims Package is submitted as to the same Interest in the same acreage (whether under this Agreement or the MDL Settlement Agreement), the single Claims Package to be considered, and the program under which it shall be considered, shall be determined as follows:

2.17.1  Duplicative Claims Involving Two or More Lawyers or Law Firms

2.17.1.1  As to any Duplicative Claims where two or more lawyers or law firms are named as Enrolling Counsel (whether submitted pursuant to this Program or the GMB Program), the Claims Administrator shall promptly notify each such lawyer or law firm of the Duplicative Claims. Within seven (7) days thereafter, the notified firms shall produce a true and correct copy of that firm's

19

representation agreement signed by the Eligible Claimant(s), Affiliated Claimant(s), or an owner of the Eligible or Affiliated Claimant(s) at issue to the other identified firm. A law firm failing to timely produce its representation agreement signed by the Eligible Claimant(s), Affiliated Claimant(s), or an owner of the Eligible or Affiliated Claimant(s) at issue shall be entitled to no fees for that particular claim filed on behalf of an Eligible Claimant, Affiliated Claimant(s), or an owner of the Eligible or Affiliated Claimant(s), the Claims Package filed by that law firm shall be disregarded, and only the Claims Package filed by the law firm who did timely produce its representation agreement shall be considered by the Claims Administrator.

2.17.1.2  If more than one lawyer or law firm timely produces a representation agreement with the Eligible Claimant(s), Affiliated Claimant(s), or an owner of the Eligible or Affiliated Claimant(s) at issue, the lawyers or law firms shall attempt to resolve the dispute. If within twenty (20) days of the Claims Administrator's Duplicative Claim notice all such lawyers or law firms have not agreed on which lawyers or law firms shall be deemed to be the Enrolling Counsel for such Eligible Claimant and which of the Duplicative Claims is to be the prevailing Claims Package and so notified the Claims Administrator, the Claims Administrator shall promptly refer the dispute between the lawyers or law firms to the Arbitrator.

2.17.1.2.1  Within ten (10) days of the date that the dispute is referred to the Arbitrator, the disputing lawyers or law firms shall submit to the Arbitrator and to the Claims Administrator any additional materials in support of their claims that they may desire or as may be required by the Arbitrator.

2.17.1.2.2  In resolving disputes between lawyers or law firms over Duplicative Claims, the Arbitrator first shall determine whether each lawyer or law firm has a signed agreement with the Eligible Claimant, Affiliated Claimant(s), or an owner of the Eligible or Affiliated Claimant(s). If there is more than one signed representation agreement with the Eligible Claimant, Affiliated Claimant(s), or an owner of the Eligible or Affiliated Claimant(s), the Arbitrator shall resolve disputes between lawyers and law firms based upon all the facts and circumstances timely presented to the Arbitrator.

20

2.17.1.2.3   The Arbitrator shall rule on each such dispute within thirty (30) days of the deadline established pursuant to Section 2.17.1.2.1 above. The ruling of the Arbitrator as to which of the Duplicative Claims is to be considered by the Claims Administrator shall be final, binding and Non-Appealable.

2.17.1.3   The fees and costs of the Arbitrator shall be borne by the lawyer or law firm that is not the Prevailing Party. Bayer shall not be responsible for any fees or expenses incurred in resolving disputes between the lawyers and law firms, including fees and expenses charged or incurred by the Arbitrator in doing so. Nor shall any work by the Arbitrator resolving these disputes delay or take priority over work related to resolving disputes regarding benefits due Enrolled Claimants who have not submitted Duplicative Claims under this Agreement or the MDL Settlement Agreement.

2.17.2   <u>All Other Duplicative Claims</u>.

2.17.2.1   As to any and all Duplicative Claims involving either one or no lawyers or law firms (whether submitted under this Program or the MDL Program), the Claims Administrator promptly shall notify GMB and Bayer as well as each such Claimant's respective Counsel (and when one or more Duplicated Claims are filed by Eligible or Enrolled Claimants who are not represented, the Eligible or Enrolled Claimant) of the existence of Duplicative Claims.

2.17.2.2   The various parties who have made Duplicative Claims shall attempt to resolve the dispute. If within ten (10) days of the Claims Administrator's Duplicative Claim notice all such parties have not agreed as to which Claims Package shall be the prevailing Claims Package as well as the identity of the Enrolling Counsel (if any) and so notified the Claims Administrator, the Claims Administrator shall promptly refer the dispute to the Arbitrator.

2.17.2.3   Within ten (10) days of the date that the dispute is referred to the Arbitrator, any implicated Eligible Claimant through Enrolling Counsel (if any, and when one or more Duplicated Claims are filed by Eligible or Enrolled Claimants who are not represented, the Eligible or Enrolled Claimant) shall submit to the Arbitrator and to the Claims Administrator any additional materials in support of their claims that they may desire or as may be required by the Arbitrator.

21

2.17.2.4   The Arbitrator shall rule on each such dispute within thirty (30) days of the deadline established pursuant to Section 2.17.2.3 above. The ruling of the Arbitrator as to which of the Duplicative Claims is to be considered by the Claims Administrator shall be final, binding, and Non-Appealable.

2.17.2.5   The fees and costs of the Arbitrator presumptively shall be borne by the Person whose Claims Package is the prevailing Claims Package, in which case, such fees and costs may be deducted from any Settlement Payment to be made in respect of that Claims Package. However, the Arbitrator shall be the ultimate arbiter of who is to bear the Arbitrator's fees and costs, provided that, in no event shall Bayer be responsible for any fees or expenses incurred in resolving disputes regarding Duplicative Claims, including fees and expenses charged or incurred by the Arbitrator in doing so. Nor shall any work by the Arbitrator resolving these disputes delay or take priority over work related to resolving disputes regarding benefits due Enrolled Claimants who have not submitted Duplicative Claims under this Agreement or the MDL Settlement Agreement.

2.17.3   If any Settlement Payment has already been made to a Enrolled Claimant in respect of a Claims Package that is later determined to be a Duplicative Claim, all Enrolled Claimants and their Counsel agree (1) to be bound by any determination under the above Sections 2.17.1 and 2.17.2; (2) if necessary to comply with such determination, to return monies received to the Qualified Settlement Fund for subsequent disposition in accordance with such determination (however, Counsel's obligation to return monies is limited to the amount of such monies remaining in Counsel's possession); and (3) to hold Bayer, the Claims Administrator, and the QSF Administrator harmless in any attempt to collect monies already paid to an Enrolled Claimant because such payments were later determined to have been in respect of one or more Duplicative Claims. Enrolled Claimants and their Counsel expressly agree that when payments are made to one Enrolled Claimant and, if applicable, their Counsel (Claimant A), that later are determined, under Sections 2.17.1 or 2.17.2, to be due a different Enrolled Claimant and, if applicable, their Counsel, (Claimant B) that Claimant B will only be paid for that portion that was a Duplicative Claim when Claimant A returns the applicable funds to the Qualified Settlement Fund.

2.17.4   If any Funding Payment, or part thereof, has been made to the Qualified Settlement Fund in respect of a Claims Package that is later determined to be a Duplicative Claim, if and to the extent that such Funding Payment has not been distributed to the Enrolled Claimant, all Enrolled Claimants and their Counsel as well as the QSF Administrator agree to be bound by any determination under the above Sections 2.17.1 and

22

2.17.2; and , if necessary to comply with such determination, the QSF Administrator shall transfer to the Qualified Settlement Fund established under the GMB Settlement Agreement said Funding Payment provided further that the GMB QSF Administrator certifies it has not received a Funding Payment for such Claims Package , Enrolled Claimants and their Counsel expressly agree that when payments are transferred to the Qualified Settlement Fund established under the GMB Settlement Agreement that later are determined, under Sections 2.17.1 or 2.17.2, to be due an Enrolled Claimant under this Agreement such Claimant will only be paid in respect of its Claims Package when the GMB QSF Administrator transfers the applicable funds to the Qualified Settlement Fund established under this Agreement.  To the extent the QSF Administrator has distributed the Funding Payment to the Enrolled Claimant before receipt of any determination that the Claims Package is a Duplicative Claim, the QSF Administrator shall have no further obligation or duty with regard to such Funding Payment.  This Section 2.17.4, nor any other portion of this Agreement, shall not in any circumstance permit a transfer of funds otherwise precluded by 26 U.S.C. Sec. 468B(d)(1)(A).

2.18   Upon receipt of payment by any Enrolled Claimant under this Agreement, subject to its receipt of a Release executed by such Enrolled Claimant and, as applicable, a Release duly executed by any Affiliated Claimant to such Enrolled Claimant, Bayer releases such Enrolled Claimant and any such Affiliated Claimant from any claim related to the presence of Bayer GM Rice Seed in the United States rice supply.  The foregoing release specifically excludes, and Bayer is not prohibited or limited in any way by such release from bringing, the following claims:

- Any claim arising out of any commercial transaction between such Enrolled Claimant or Affiliated Claimant and Bayer or any Person that sells or distributes any Bayer product.

- Any claim against any other Person that may affect anticipated payments from any Additional Released Party or may affect the ownership or property interest of the released Enrolled Claimant or Affiliated Claimant, directly or indirectly, in any Additional Released Party.  The foregoing release only covers claims made directly against the Enrolled Claimant or Affiliated Claimant.

- Any claim against any Enrolled Claimant or Affiliated Claimant related to fraudulent or deceptive information submitted to the Claims Administrator under this Agreement or to enforce an obligation of an Enrolled Claimant or Affiliated Claimant under this Agreement.

**Article 3 – Walk Away Rights and Termination of Agreement**

3.1 **Walk Away Rights and Termination of Agreement**

If a Summary Report received after the Enrollment and Claims Package Deadline Date or the Final Summary Report indicates that the Settlement Threshold has been met, Bayer has no Walk Away Right. If no such Report has been received, then during the period beginning upon Bayer's receipt of the Final Summary Report and ending at midnight Central Time on the tenth (10th) day thereafter (such period being referred to as the "<u>Walk Away Period</u>" and the last day of such period being referred to herein as the "<u>Walk Away Deadline</u>") Bayer shall have the option, in its sole discretion, to terminate the Program and this Agreement (such option being referred to herein as, the "<u>Walk Away Right</u>") if:

3.1.1 The Average Claimed Acreage constitutes less than 85% of the Average Aggregate Applicable Acreage (such number of acres being referred to herein as "<u>Settlement Threshold</u>").

3.1.1.1 "<u>Average Claimed Acreage</u>" shall be determined by taking a simple average of the Claimed Acreage for calendar years 2006, 2007, 2008 and 2009. "<u>Claimed Acreage</u>" means, as to any applicable calendar year, the aggregate size of the crop in acres in which Enrolled Claimants have an Interest (including the Interests of any Affiliated Claimants) as represented by Completed Enrollment and Claims Packages for Market Losses together with the aggregate size of the crop in which Enrolled Claimants have an Interest (including the Interests of any Affiliated Claimants) as represented by Completed Enrollment and Claims Packages for Market Losses in the MDL Settlement Agreement (the "<u>NCC Program</u>"). Notwithstanding the foregoing, solely for purposes of determining whether the Settlement Threshold has been met, Claimed Acreage will include the acreage reflected in any Enrollment and Claims Package for Market Losses that otherwise would be a Completed Enrollment and Claims Package but for its having been determined to be a Duplicate Claim, the Claimed Acreage shall include the acreage in the Enrollment and Claims Package with the highest number of properly documented acres, <u>provided that</u> such acreage is counted only once. Claimed Acreage specifically excludes the Interests of all Excluded Trial Claimants and specifically includes the Interests of all Included Trial Claimants. The "<u>Average Aggregate Applicable Acreage</u>" is 2,229,500, which is the simple average long-grain rice acres planted in 2006, 2007, 2008, and 2009 according to the USDA.

3.1.1.2 An Interest in a crop shall be calculated by acre and in accordance with the data reflected on the corresponding Form

24

578. By way of illustration only, if a Form 578 demonstrates that an Eligible Claimant has a "share rent" arrangement with a landlord in the ratio of 75/25 and a total of 100 acres of long-grain rice is reflected on the form, the Eligible Claimant will be deemed to have an Interest in 100 acres if the landlord is an Affiliated Claimant and has signed a Release and a Landlord Consent and Instruction to Pay Tenant Form and 75 acres if the landlord has not done so. (Interests in crops shall be calculated without regard to, or reduction for, landlord portions of any cash rent arrangements.)

## 3.2 Time to Exercise Walk Away Right

3.2.1   Bayer may exercise its Walk Away Right during the Walk Away Period upon written notice to such effect delivered to the Persons set forth in Section 3.2.4 below.

3.2.2   If Bayer has a Walk Away Right, alternatively, Bayer may, in its sole and absolute discretion, do any of the following at any time during the Walk Away Period upon written notice to such effect delivered to GMB (care of Martin Phipps and Mikal Watts):

    3.2.2.1   extend the cure period for correcting Materially Delinquent or Deficient Enrollment and Claims Packages and extend the date for the exercise of its Walk Away Right by a period of fifteen (15) days thereafter;

    3.2.2.2   irrevocably waive its Walk Away Right; or

    3.2.2.3   waive its Walk Away Right but reduce the Overall Cap as well as the (y) Cheniere/CL-131 Cap and (z) the Other Losses Cap and the Other Losses Fund pro rata based on a fraction, the numerator of which shall be the Average Claimed Acreage and the denominator of which shall be the Settlement Threshold.

3.2.3   If Bayer has the right to exercise the Walk Away Right but fails to do so on or before the Walk Away Deadline, the Walk Away Right shall have expired as of such date. The date on which the Walk Away Right expires or is waived, or, if earlier, the date on which Bayer has received a Summary Report after the Enrollment and Claims Package Deadline Date or the Final Summary Report that indicates that the Settlement Threshold has been met, is referred to herein as the "Effective Date."

3.2.4   Bayer shall exercise its Walk Away Right, or waive the same, or exercise any alternative under Section 3.2.2 by giving written notice to GMB (care of Martin Phipps and Mikal Watts) and the date of such notice shall be determined by the date such notice was sent.

### 3.3    Effects of Termination

3.3.1   Upon exercising its Walk Away Right, any term of this Agreement to the contrary notwithstanding, this Agreement immediately shall terminate and (without limitation of the foregoing) Bayer immediately shall cease to have any further financial obligations under this Agreement (including Article 5), except only that Bayer shall continue to be responsible to pay the Administrative Expenses specified in Section 5.1 and arbitration expenses with respect to arbitrations in which Bayer is not the Prevailing Party or in which there is no Prevailing Party. All other parties responsible for costs under Section 5.1 or in arbitrations where they are not the Prevailing Party shall continue to be responsible for such costs. Under no circumstances is Bayer responsible for any costs incurred under Section 2.17.

3.3.2.   In the case of any exercise by Bayer of its Walk Away Right, all Releases and Stipulations of Dismissal shall be null and void and returned to GMB or destroyed.

3.3.3.   In the case of any exercise by Bayer of its Walk Away Right, Bayer agrees that any statute of limitations applicable to any claim by any Enrolled Claimant against Bayer related to the presence of GM Rice Seed in the supply of rice in the United States which had not expired on or before May 1, 2011 shall be tolled from May 2, 2011 until thirty (30) days after Bayer exercises its Walk Away Right. Bayer expressly retains all other defenses, including all statute of limitations defenses that it had as of May 1, 2011, to any such claims.

### Article 4 – Claims Evaluation

### 4.1    General

4.1.1   Each Enrolled Claimant shall receive a Settlement Payment for Market Losses in accordance with the criteria specified in Exhibit X which shall constitute evidence of loss attributable to Bayer GM Rice Seed. The Settlement Payment for Market Losses shall be made in two phases. First, in the timeframe set forth in Section 5.2.5, the Claims Administrator shall direct Bayer to remit to the Qualified Settlement Fund the Minimum Amount Due as set forth in Exhibit X. Second, after the calculation of any applicable reduction for exceeding the Overall Cap, if applicable, the Claims Administrator shall direct Bayer to remit to the Qualified Settlement Fund the remaining amount owed pursuant to Section 5.2.4 herein. An Enrolled Claimant may also be eligible to receive an additional Settlement Payment for either Cheniere/CL-131 Losses or Other Losses based on having submitted materials that satisfy the criteria specified for

26

Cheniere/CL-131 Losses as set forth in Exhibit Y, or the criteria specified for Other Losses as set forth in Exhibit Z.

4.1.2   In the event more than one Claims Package is filed for the same Interest in the same acreage (whether under this Program or the MDL Program), the Claims Administrator shall suspend further consideration of any such Person's claims under this Agreement or the MDL Settlement Agreement until such time as the matter has been resolved in accordance with the terms of Section 2.17 above. Such acreage, however, shall be counted once to determine whether the Settlement Threshold has been met in the manner set forth in Section 3.1.1.1. The Claims Administrator shall determine whether or not Duplicative Claims exist and, as appropriate, suspend further consideration under this Section before directing Bayer to remit payment under Section 4.1.1.

**4.2    Cheniere/CL-131 Claims Packages and Other Losses Claims Packages**

4.2.1   Cheniere/CL-131 Claims Packages

4.2.1.1    Each Enrolled Claimant who wishes to make a claim for Cheniere/CL-131 Losses shall submit a claims package (each a "Cheniere/CL-131 Claims Package") on or before the Cheniere/CL-131 Claims Package Deadline Date.  All or any portion of any Cheniere/CL-131 Claims Package may be filed electronically in accordance with such instructions as may be provided by the Claims Administrator from time to time. Notwithstanding anything to the contrary set forth herein, only tenants (including farmers who own the land they farmed) may submit claims for Cheniere/CL-131 Losses; landlords are not eligible to submit claims for Cheniere/CL-131 Losses. However, a tenant may submit claims for Cheniere/CL-131 Losses in respect of their own Interests as well as the Interests of any landlord who has an Interest in the same crop provided that the tenant secures and submits a Release and Landlord Consent and Instruction to Pay Tenant Form executed by the landlord.  For example, if a Form 578 demonstrates that an Enrolled Claimant has a "share rent" arrangement with a landlord in the ratio of 75/25 and a total of 100 acres of long-grain rice is reflected on the form, the Enrolled Claimant will be deemed to have an Interest in the crop of 75 acres if the landlord has not signed a completed Release and Landlord Consent and Instruction to Pay Tenant Form and Interest in the crop of 100 acres if the landlord has signed both completed documents.  By way of further example, assume a Form 578 demonstrates that an Enrolled Claimant has two tracts of land, with a total of 100 acres of long grain rice reflected on the form for each tract, and two different landlords, each of whom has a

27

25% interest in the crop on the respective tracts. The tenant submits a Release and Landlord Consent and Instruction to Pay Tenant Form executed by one landlord, but not the other. The Enrolled Claimant will be deemed to have an 87.5% interest in the crop from the 200 acres for purposes of his Cheniere/CL-131 submission.

4.2.1.2    Each Cheniere/CL-131 Claims Package shall contain the following materials, together with any requisite supporting documentation called for in the corresponding Exhibits, if and to the extent applicable to an Enrolled Claimant:

4.2.1.2.1    A Cheniere/CL-131 Claims Form, in the form attached hereto as Exhibit A-2;

4.2.1.2.2    Wire Instructions for use by the QSF Administrator in connection with any Settlement Payment to be made to such Enrolled Claimant subject to and in accordance with the terms of the Qualified Settlement Fund Agreement; and

4.2.1.2.3    Reasonable documentation of Cheniere/CL-131 Losses as further described in Exhibit Y attached hereto.

4.2.1.3    Enrolling Counsel may submit on behalf of Enrolled Claimants Cheniere/CL-131 Claims Packages, as well as any updates or corrections to previously submitted Cheniere/CL-131 Claims Packages, on a rolling basis at any time prior to the Cheniere/CL-131 Claims Package Deadline Date and the Cheniere/CL-131 Claims Package Cure Deadline Date, as applicable.

4.2.1.4    Within sixty (60) days of the Cheniere/CL-131 Claims Package Deadline Date, the Claims Administrator shall notify the Eligible Claimant (through his Enrolling Counsel) either (i) that the Cheniere/CL-131 Claims Package constitutes a Completed Cheniere/CL-131 Claims Package in accordance with the form attached hereto as Exhibit J-2, or (ii) that the Cheniere/CL-131 Claims Package is Materially Delinquent or Deficient and has been rejected in whole or in part. The Claims Administrator shall specifically identify all reasons for the determination that the Enrollment and Claims Package is Materially Delinquent or Deficient. Any Cheniere/CL-131 Claims Package as to which no such notice timely has been delivered shall be deemed accepted. Bayer may, at its expense and discretion, notify the Claims Administrator, the Enrolling

28

Counsel, and GMB of Cheniere/CL-131 Claims Packages that it deems Materially Delinquent or Deficient and the basis for its belief for such Material Delinquency or Deficiency within thirty (30) days of receipt of the Cheniere/CL-131 Claims Package. Enrolling Counsel or GMB may provide whatever information they deem appropriate to the Claims Administrator regarding Bayer's submission within fifteen (15) days of any such notification by Bayer. Thereafter, the Claims Administrator shall determine whether the Cheniere/CL-131 Claims Package is Materially Delinquent or Deficient.

4.2.1.5   An Enrolled Claimant who timely has received a notice from the Claims Administrator that his Cheniere/CL-131 Claims Package has Material Delinquencies or Deficiencies shall have sixty (60) days from receipt of such notice to submit a corrected Cheniere/CL-131 Claims Package. All or any portion of any corrected Cheniere/CL-131 Claims Package may be filed electronically in accordance with such instructions as may be provided by the Claims Administrator from time to time. Under no circumstances may an Enrolled Claimant increase their claim in any manner for Cheniere/CL-131 Losses in any form in their corrected Cheniere/CL-131 Claims Package, including but not limited to claiming more acres of Cheniere/CL-131 grown in 2006 or by seeking to recover for Affiliated Claimants not identified as an Affiliated Claimant in their original Claims Package. Any corrected Cheniere/CL-131 Claims Package that has not been rejected on or prior to the fortieth (40th) day after the applicable Cheniere/CL-131 Claims Package Cure Deadline Date shall be deemed accepted. Bayer may, at its expense and discretion, notify the Claims Administrator, the Enrolling Counsel, and the GMB within twenty (20) days of receipt of any corrected Cheniere/CL-131 Claims Packages that it deems Materially Delinquent or Deficient and the basis for its belief for such Material Delinquency or Deficiency. Enrolling Counsel or the GMB may provide whatever information they deem appropriate to the Claims Administrator regarding Bayer's submission within ten (10) days of any such notification by Bayer. Thereafter, the Claims Administrator shall determine whether the Cheniere/CL-131 Claims Package is Materially Delinquent or Deficient.

4.2.1.6   Subject to the terms of Section 4.2.1.7 below, if an Enrolled Claimant fails timely to submit a corrected Cheniere/CL-131 Claims Package free of any Material Delinquency or Deficiency, such Enrolled Claimant will be rendered ineligible for any Settlement Payments for Cheniere/CL-131 Losses

29

under this Agreement. In any event, such Enrolled Claimant's Release and Stipulation of Dismissal, as applicable, nonetheless shall remain in full force and effect and promptly shall be delivered by the Claims Administrator to Bayer (and, without limitation, Bayer shall be free to file or cause to be filed such Stipulation of Dismissal and/or Release in any relevant action or proceeding).

4.2.1.7    If the Claims Administrator has determined that an Eligible Claimant has submitted adequate information for some portion of the claim, the Claims Administrator shall accept the Cheniere/CL-131 Claims Package (or corrected Cheniere/CL-131 Claims Package) solely as to that portion of the claims for which adequate information has been submitted so long as there are no Material Delinquencies or Deficiencies related to the portion of the claim adequately submitted.

4.2.1.8    The Claims Administrator may, in his discretion, approve or reject any Cheniere/CL-131 Claims Package or corrected Cheniere/CL-131 Claims Package, or any part thereof, at a rate faster than is required pursuant to the terms hereof but shall not do so prior to the time permitted for Bayer to provide notice of whether or not it believes a Cheniere/CL-131 Claims Package or corrected Cheniere/CL-131 Claims Package contains Material Delinquencies or Deficiencies.

4.2.1.9    An Enrolled Claimant may appeal the Claims Administrator's decision to reject a corrected Cheniere/CL-131 Claims Package in whole or in part solely by delivering to the Claims Administrator a Notice of Appeal within ten (10) days of receipt of notice of such rejection.

4.2.1.9.1    Within thirty (30) days of the date that the Notice of Appeal is sent to the Claims Administrator, the Enrolled Claimant shall submit to the Arbitrator and to the Claims Administrator any additional materials in support of his claim as he may desire or as may be requested by the Arbitrator.

4.2.1.9.2    Bayer and the Claims Administrator shall have a period of twenty (20) days following the receipt by both the Claims Administrator and the Arbitrator of all materials submitted in accordance with 4.2.1.9.1 above to respond to the appeal and submit relevant documentation.

30

4.2.1.9.3    The Arbitrator shall rule on each appeal within thirty (30) days of the deadline established pursuant to Section 4.2.1.9.2 above and, in the event no response is filed, the Arbitrator shall rule on each appeal within thirty (30) days of his receipt of the appeal or, if later, the deadline established pursuant to Section 4.2.1.9.1 above. The ruling of the Arbitrator shall be final, binding and Non-Appealable.

4.2.1.9.4    If an Enrolled Claimant fails to meet any of the deadlines set forth in this Section 4.2.1.9, its right to appeal shall be extinguished and the Claims Administrator's decision shall be final, binding and Non-Appealable.

4.2.1.9.5    If an Enrolled Claimant files a Notice of Appeal and the Enrolled Claimant is not the Prevailing Party in respect of such appeal as determined by the Arbitrator, the Enrolled Claimant shall be liable for the fees and costs of the Arbitrator related to such appeal, which such fees and costs may be deducted from any Settlement Payment to be made with respect to the Enrolled Claimant hereunder.  Likewise, if an Enrolled Claimant files a Notice of Appeal and the Enrolled Claimant is the Prevailing Party in respect of such appeal as determined by the Arbitrator, the Enrolled Claimant shall not be liable for the fees and costs of the Arbitrator related to such appeal (subject to the balance of the terms of this Section 4.2.1.9.5), rather Bayer shall be so responsible.  In any event where the Arbitrator's Award is exactly between the parties' positions, then the parties to the arbitration share equally in the costs incurred and there is no Prevailing Party.  Even if the Enrolled Claimant would otherwise be the Prevailing Party, if the Claimant submits additional material under Section 4.2.1.9.1 then the Arbitrator shall determine (1) whether those submissions materially changed the submission of the Claimant and (2) if so, then the Claimant shall bear all costs and expenses of the arbitration.

4.2.1.10    Upon the completion of all appeals in accordance with the terms of Section 4.2.1.9 above, the Claims Administrator shall make any necessary adjustments in respect of the degree to

31

which the Enrolled Claimant's Cheniere/CL-131 Claims Package will be considered accepted or rejected in accordance with the rulings by the Arbitrator.

4.2.1.11    Within ten (10) days after the calculation of reductions in payments, if any, called for under Section 5.2.4 for exceeding the Overall Cap, said payments shall be remitted to the Qualified Settlement Fund in the amount called for.

**4.2.2   Other Losses Claims Packages**

4.2.2.1    Each Enrolled Claimant who wishes to make a claim for Other Losses shall submit a supplemental claims package (each a "Other Losses Claims Package") on or before the Other Losses Claims Package Deadline Date. All or any portion of any Other Losses Claims Package may be filed electronically in accordance with such instructions as may be provided by the Claims Administrator from time to time.   Notwithstanding anything to the contrary set forth herein, only tenants (including farmers who own the land they farmed) may submit claims for Other Losses; landlords, in their capacity as landlords, are not eligible to submit claims for Other Losses.  However, a tenant may submit claims for Other Losses in respect of their own Interests as well as the Interests of any landlord who has an Interest in the same crop provided that the tenant secures and submits a Release executed by the landlord.  For example, if a Form 578 demonstrates that an Enrolled Claimant has a "share rent" arrangement with a landlord in the ratio of 75/25 and a total of 100 acres of long-grain rice is reflected on the form, the Enrolled Claimant will have any Other Losses claim reduced by 25% if the landlord has not signed a completed Release and Landlord Consent and Instruction to Pay Tenant Form.  If the landlord has signed both completed documents, no reduction shall occur.  By way of further example, assume a Form 578 demonstrates that an Enrolled Claimant has two tracts of land, with a total of 100 acres of long grain rice reflected on the form for each tract, and two different landlords, each of whom has a 25% interest in the crop on the respective tracts.  The tenant submits a Release and Landlord Consent and Instruction to Pay Tenant Form executed by one landlord, but not the other.  The Enrolled Claimant will be deemed to have an 87.5% interest in the crop from the 200 acres for purposes of his Cheniere/CL-131 submission.For the avoidance of doubt, any payments from the Other Losses fund when a landlord is not an Affiliated Claimant shall be reduced by that landlord's Interest regardless of whether the claim is for reduced revenue or higher expenses.  Each Other Losses Claims Package shall contain the following materials, together with any

32

requisite supporting documentation called for in the corresponding Exhibits, if and to the extent applicable to an Enrolled Claimant:

4.2.2.1.1   An Other Losses Claims Form, in the form attached hereto as Exhibit A-3;

4.2.2.1.2   Wire Instructions for use by the QSF Administrator in connection with any Settlement Payment to be made to such Enrolled Claimant subject to and in accordance with the terms of the Qualified Settlement Fund Agreement; and

4.2.2.1.3   Reasonable documentation of Other Losses as further described in Exhibit Z attached hereto.

4.2.2.2   Enrolling Counsel may submit on behalf of Enrolled Claimants Other Losses Claims Packages, as well as any updates or corrections to previously submitted Other Losses Claims Packages, on a rolling basis at any time prior to the Other Losses Claims Deadline Date and the Other Losses Package Cure Deadline Date, as applicable.

4.2.3   Each Cheniere/CL-131 Claims Package and each Other Losses Claims Package, including each element thereof, must be submitted on behalf of the Eligible Claimant by his Enrolling Counsel.

4.2.4   Bayer, GMB, and the Claims Administrator (together with such Person's respective representatives and others deemed necessary by such Person to assist either such Person and/or its representatives), will have unlimited access to all Cheniere/CL-131 Claims Packages and all Other Losses Claims Packages, including any related supporting documentation. If any Cap is reached, then the NCC shall also have access to all Cheniere/CL-131 Claims Packages and all Supplemental Claims Packages, including any related supporting documentation, provided, however, that the party requesting information shall pay for all costs, including administrative costs, to obtain such information. Each of Bayer, GMB, the Claims Administrator and any representative or other Person who gains access to Cheniere/CL-131 Claims Packages and/or Other Losses Claims Packages in accordance with the terms of this Section 4.2.4 shall maintain such materials in strict confidence and use such materials solely as contemplated by the terms of this Agreement. All parties with such access agree not to disclose any information contained in the Cheniere/CL-131 Claims Packages and/or Other Losses Claims Packages, including any related supporting documentation. To the extent any such information is shared with others deemed necessary as permitted above, the person sharing such information shall be required to agree in writing not to

33

disclose such information to anyone not expressly allowed to have access to it under this Agreement.

4.2.5  If no payments have been made under Section 5.3.8, within ten (10) days after the calculation of reductions in payments, if any, called for under Section 5.2.4 for exceeding the Overall Cap, said payments shall be remitted to the Qualified Settlement Fund in the amount called for.

## 4.3  Claim Assessment Process

4.3.1  With respect to each Completed Enrollment and Claims Package, the Claims Administrator, taking into account any revisions in accordance with Sections 2.3.3 or 2.9.3, shall determine the number of planted acres for which the Enrolled Claimant should receive credit pursuant to the criteria specified for Market Losses as set forth in Exhibit X, and thereby eligible for a Settlement Payment in respect of such Market Losses.

4.3.2  With respect to each Completed Cheniere/CL-131 Claims Package, the Claims Administrator shall determine, taking into account any revisions in accordance with Section 4.2.1.7 or 4.2.1.9, whether the Enrolled Claimant is eligible for a Settlement Payment in respect of Cheniere/CL-131 Losses as provided in Exhibit Y. If the Enrolled Claimant is so eligible, the Claims Administrator shall determine, taking into account any revisions in accordance with Section 4.2.1.7 or 4.2.1.9, the number of acres for which the Enrolled Claimant should receive credit pursuant to the criteria specified for Cheniere/CL-131 Losses in Exhibit Y.

4.3.3  With respect to each Completed Other Losses Claims Package, the Claims Administrator shall determine whether the Enrolled Claimant is eligible to participate in the process to determine eligibility for a Settlement Payment from the Other Losses Fund as set forth in Exhibit Z.

4.3.4  The Claims Administrator shall endeavor to process Claims Packages in the order in which each such package is determined to be a Completed Claims Package. However, the Claims Administrator shall not have any Liability for any failure to do so.

4.3.5  The Claims Administrator shall notify each Enrolled Claimant (through Enrolling Counsel), Bayer, and GMB of any and all Settlement Payments (together, the "Award") to be made to an Enrolled Claimant using a form developed for such purpose by the Claims Administrator (each a "Notice of Preliminary Award"). Notwithstanding anything to the contrary set forth herein, any such noticed Award shall be subject to (i) any appeal made in accordance with terms of Sections 2.9, 4.2.1.9, 5.3.5 or 5.4.6, as applicable (the Arbitrator's decision in respect of which shall be final, binding and Non-Appealable), (ii) Bayer's Walk Away Right under Article 3 above, (iii) any deduction from or reduction of any such Award

34

made in accordance with the terms of this Agreement or the Qualified Settlement Fund Agreement or as may mutually be agreed as between Enrolled Claimants and their Counsel, and (iv) any adjustment made in respect of the application of any applicable Cap, but otherwise shall be final, binding and Non-Appealable.

### 4.4    Duplicative Claims

In the event any Claims Package for Cheniere/CL-131 Losses or Other Losses is a Duplicative Claim (whether under this Program or the MDL Program), the Claims Administrator shall suspend further consideration of any such Person's claims under this Agreement or the MDL Settlement Agreement until such time as the matter has been resolved in accordance with the terms of Section 2.17 above, except as provided in Section 4.1.2.

### 4.5    No Punitive Damages

By submitting a Release, each Eligible Claimant and any Affiliated Claimant waives the right to receive any punitive damages in respect of any Eligible Claim and each Eligible Claimant and each Affiliated Claimant understands and agrees that no Settlement Payment paid hereunder is, or shall be deemed to be, attributable to punitive or emotional damages.

### Article 5 – Bayer Funding Obligations

Bayer agrees, subject to the terms and conditions hereof, to make the Settlement Payments that it is required to make from time to time pursuant to this Article (collectively, the "Funding Payments"). The parties agree that, absent its inability or failure to timely pay, (y) Bayer CropScience LP will make such payments, and (z) all references herein to Bayer with respect to an obligation to pay shall refer to Bayer CropScience LP. If Bayer CropScience LP does not timely make any payments, the other Bayer entities agree to make such payments promptly.

### 5.1    Administrative Expenses

5.1.1    Bayer shall be responsible for paying the fees and expenses incurred by the Claims Administrator in administering the Program (the "Administrative Expenses"), except that any party seeking information under Section 2.14 or Section 4.2.4 or Article 9 shall bear the entire cost of such request, including administrative fees and costs.

5.1.2    Within three (3) Business Days after the end of each full calendar month following the Execution Date, the Claims Administrator shall submit to Bayer and GMB, in such form and in such detail as Bayer reasonably from time to time may specify, a report (each an "Expenses Report"), itemizing and certifying a list of all Administrative Expenses incurred during such calendar month and itemizing any costs to be paid by any party other than Bayer by party.

35

5.1.3   Bayer and all other parties incurring fees and costs shall pay the Administrative Expenses described in each Expenses Report within thirty (30) days of receipt thereof or as otherwise agreed as between that party and the Claims Administrator.

**5.2    Market Losses**

36

5.2.1   Beginning on the forty-fifth (45) day following the Execution Date, the Claims Administrator shall provide to Bayer and to GMB (care of Martin Phipps and Mikal Watts) a summary report (each a "Summary Report" ) that (x) includes a list of all Enrolled Claimants who have theretofore submitted Completed Enrollment and Claims Packages, (y) a list summarizing by Enrolling Counsel the total acres of Interest by year submitted on Completed Enrollment and Claims Packages under this Settlement Agreement, and (z) indicates what percentage of the Settlement Threshold has been achieved to date under this Settlement Agreement and the NCC Settlement Agreement.

5.2.2   Thereafter, on the last day of each succeeding period of thirty (30) days (ending, at the latest, on the thirtieth (30th) day following the last possible Enrollment and Claims Package Cure Deadline Date), the Claims Administrator shall provide to Bayer and to GMB (care of Martin Phipps and Mikal Watts) an updated Summary Report. The last such Summary Report due hereunder is referred to herein as the "Final Summary Report."

5.2.3   On or after the Effective Date, the Claims Administrator shall calculate the preliminary amount due to each Enrolled Claimant identified therein for Market Losses reflecting the Minimum Amount Due in accordance with the formula described in Exhibit X (the "Initial Market Losses Payment List") and shall provide such Initial Market Losses Payment List by the fifth (5th) day following its delivery of the first Summary Report to be delivered after the Enrollment and Claims Package Deadline Date. Following the delivery of the Initial Market Losses Payment List, on a schedule to coincide with its delivery of each subsequent Summary Report, the Claims Administrator shall provide to Bayer and to GMB an updated list setting out the Minimum Amount Due to each additional Claimant who theretofore has submitted a Completed Enrollment and Claims Package (each a "Supplemental Market Losses Payment List").

5.2.4   Within thirty (30) days following the completion of all rulings by the Arbitrator on all appeals allowed under this Agreement, whether with respect to Claims Packages or to any Award, the Claims Administrator shall provide to Bayer and to GMB a list (the "Final Enrolled Claimant Payment List") setting out the final amount due to each Claimant for Market Losses, Cheniere/CL-131 Losses and Other Losses, as applicable, after the application of the Overall Cap.

5.2.4.1   Such Final Enrolled Claimant Payment List shall include Market Losses reflecting the highest amount payable per acre in accordance with the formula described in Exhibit X attached hereto if the aggregate of Market Losses Payments calculated at such rate, Cheniere/CL-131 Losses Payments and Other Losses Payments (collectively, the "Aggregate Payments") are equal to or less than the Overall Cap.

37

5.2.4.2   If the Aggregate Payments exceed the Overall Cap, the Claims Administrator shall reduce payments by the methodologies set forth in Section 5.5.2 and shall provide to Bayer and to GMB a Final Enrolled Claimant Payment List, as so adjusted.

5.2.4.3   Within fifteen (15) days of receipt of the Final Enrolled Claimant Payment List, adjusted as necessary to comply with any Caps and to account for payments already made, Bayer shall (i) transfer funds electronically to the Qualified Settlement Fund for the benefit of the Enrolled Claimants entitled to Settlement Payments equal, in the aggregate, to the remaining Settlement Payments to be made to Enrolled Claimants for Market Losses pursuant to this Agreement and in accordance with the instructions accompanying the corresponding list and (ii) cause notice of such transfer to be delivered to the Claims Administrator and the GMB.

5.2.5   Within fifteen (15) days of its receipt of (x) the first Market Losses Payment List delivered after the Enrollment and Claims Package Deadline Date and (y) each subsequent Market Losses Payment List, Bayer shall (i) transfer funds electronically to the Qualified Settlement Fund for the benefit of the Enrolled Claimants entitled to Settlement Payments for Market Losses (as reflected on the corresponding Market Losses Payment List) equal, in the aggregate, to the Settlement Payments to be made to such Enrolled Claimants for Market Losses pursuant to this Agreement and in accordance with the instructions accompanying the corresponding Market Losses Payment List; and (ii) cause notice of such transfer to be delivered to the Claims Administrator and GMB. Notwithstanding the foregoing, Bayer may take up to twenty five (25) days to make the first transfer of funds under this Section 5.2.5 in the event the Claims Administrator notifies Bayer and the NCC that it has not completed its review of Enrollment and Claims Form Packages, that the time period(s) for reviewing such submissions has (have) not yet expired and that the corresponding Market Losses Payment List may contain errors. As to any original Initial Market Losses Payment List or Supplemental Market Payment List, should Bayer receive a *revised* Market Losses Payment List from the Claims Administrator prior to the applicable deadline for transferring funds, Bayer shall be obligated to transfer funds only in accordance with the revised Market Losses Payment List. Settlement Payments in respect of Market Losses shall be made from the Qualified Settlement Fund in accordance with the terms of the Qualified Settlement Fund Agreement.

5.2.6   Within three (3) days of receiving notice of any electronic transfer of funds pursuant to Article 5.2.5 above, the Claims Administrator shall deliver to Bayer the original Release corresponding to each Enrolled Claimant who is eligible for a Settlement Payment from the Qualified

Settlement Fund (as reflected on the corresponding Market Losses Payment List) and, if any, the Stipulation of Dismissal for each such Enrolled Claimant (and, without limitation, Bayer shall be free to file or cause to be filed such Stipulation of Dismissal and/or Release in any relevant action or proceeding).

**5.3     Cheniere/CL-131 Losses**

Producers who planted Cheniere and/or CL-131 in 2006 have claimed that they suffered losses as a result ("Cheniere/CL-131 Losses"). For simplicity's sake, Bayer and each Enrolled Claimant who accedes to the terms of this Agreement have agreed that, should such a Producer (but not a landlord) who is an Enrolled Claimant elect to receive a payment for Cheniere/CL-131 Losses and timely submit a Completed Cheniere/CL-131 Claims Package, Bayer will make a one-time payment per acre of Cheniere or CL-131 planted in 2006 by such Producer in accordance with the terms of Exhibit Y attached hereto (each a "Cheniere/CL-131 Losses Payment"). This payment is intended to be a fast-track solution to compensate Producers for Cheniere/CL-131 Losses. A decision to participate in the Cheniere/CL-131 Fund shall constitute a full and final payment by Bayer of any and all such Cheniere/CL-131 Losses that have or could have been claimed by the applicable Enrolled Claimant. Enrolled Claimants may seek to recover Cheniere/CL-131 Losses from the Other Losses Fund instead, but may not participate in the Cheniere/CL-131 Fund and also participate in the Other Losses Fund. Any payments for Cheniere/CL-131 Losses from the Other Losses Fund shall not be based on the Cheniere/CL-131 Formula, may be greater or lesser than any payments for Cheniere/CL-131 Losses from the Cheniere/CL-131 Fund, and shall be excluded from any determination related to the Cheniere/CL-131 Losses Cap (but will be included in any determination related to the Other Losses and Overall Caps).

5.3.1   If the Enrolled Claimant elects not to participate in the Cheniere/CL-131 Fund, the Enrolled Claimant shall not be entitled to any payment from the Cheniere/CL-131 Fund and waives any right under this Agreement, the Program, any law or rule, or otherwise, to seek any recovery for Cheniere/CL-131 Losses from such fund or calculated using the Cheniere/CL-131 Formula.

5.3.2   No later than forty five (45) days after the Cheniere/CL-131 Claims Package Deadline Date, the Claims Administrator shall attempt to make an initial determination of all Cheniere/CL-131 Losses sought by all Enrolled Claimants under this and the GMB Settlement Agreement, including all Claims Packages that contain Material Delinquencies or Deficiencies. If the Claims Administrator is able to make that determination in spite of the Material Delinquencies or Deficiencies and all Cheniere/CL-131 Claims will be less than the Cheniere/CL-131 Losses Cap, then the Claims Administrator shall calculate the amount which each Enrolled Claimant who has submitted a Completed Cheniere/CL-131

39

Claims Package would receive pursuant to the terms set forth in Exhibit Y (the "Cheniere/CL-131 Formula" or "Formula") and shall provide to Bayer and to GMB (care of Martin Phipps and Mikal Watts) a list of all Enrolled Claimants (i) who have submitted Completed Cheniere/CL-131 Claims Packages, (ii) who have satisfied the criteria set forth in Exhibit Y and thereby have become eligible for a Cheniere/CL-131 Losses Paymentand (iii) the amount which each Enrolled Claimant would receive in accordance with the Cheniere/CL-131 Formula (the "Preliminary Cheniere/CL-131 Payment List"). If the Claims Administrator is unable to make an initial determination of all Cheniere/CL-131 Claims sought by all Enrolled Claimants due to Material Delinquencies or Deficiencies in Claims Packages, then the Claims Administrator shall determine the Preliminary Cheniere/CL-131 Payment List no later than thirty (30) days after the last ruling of the Arbitrator as to any appeal of the Claims Administrator's rejection (in whole or in part) of a Cheniere/CL-131 Claims Package brought in accordance with Section 4.1.2.9 above. Participation in the Cheniere/CL-131 Losses Fund is limited to those Eligible Claimants who actually farmed the land. In the event that any landlord for the 2007 crop year is not an Affiliated Claimant, any payments to an Eligible Claimant under the Cheniere/CL-131 Formula will be reduced by the percentage of Interest of that landlord's share for that land relative to all long-grain rice acres. If all landlords for the 2007 crop year are Affiliated Claimants then no reduction in payment will occur.

5.3.3   If the preliminary calculation of the total amount that all claimants would receive (whether under this Agreement or the MDL Settlement Agreement) in accordance with the Cheniere/CL-131 Formula (prior to the resolution of any appeals initiated pursuant to Section 5.3.5 below or the applicable terms of the MDL Settlement Agreement) is equal to, or less than, $70,000,000 or such lower amount as may be applicable pursuant to the exercise by Bayer of its rights pursuant to Section 3.2.2.3 above (the "Cheniere/CL-131 Losses Cap"), simultaneously with its delivery of the Preliminary Cheniere/CL-131 Payment List under Section 5.3.2 above, the Claims Administrator (i) shall, pursuant to a Notice of Preliminary Award, notify each Enrolled Claimant of the sum preliminarily calculated to be payable to that Claimant in accordance with the Formula and (ii) shall apprise each Enrolled Claimant that there may be adjustments to said sum in the event, after the resolution of any appeals, the total amount payable in respect of all Cheniere/CL-131 Losses (prior to such adjustment) under this Agreement and the MDL Settlement Agreement were to exceed the Cheniere/CL-131 Losses Cap. In such event, the Claims Administrator shall reduce pro rata the Cheniere/CL-131 Losses Payment to be made to each Eligible Claimant so that the total amount of all payments in respect of Cheniere/CL-131 Losses under this Agreement and the MDL Settlement Agreement will not exceed the Cheniere/CL-131 Losses Cap. As to each such claimant, the Claims Administrator shall multiply the

40

Claimant's Cheniere/CL-131 Losses Payment by a fraction, the numerator of which shall be the Cheniere/CL-131 Losses Cap and the denominator of which shall be the total amount payable in respect of all Cheniere/CL-131 Losses (prior to adjustment) under this Agreement and the MDL Settlement Agreement.

5.3.4    If the preliminary calculation of the total amount that all claimants would receive (whether under this Agreement or the MDL Settlement Agreement) in accordance with the Cheniere/CL-131 Formula (prior to the resolution of any appeals initiated pursuant to Section 5.3.5 below or the applicable terms of the MDL Settlement Agreement)is more than the Cheniere/CL-131 Losses Cap, the Claims Administrator (i) shall reduce pro rata the amount payable to each claimant entitled to a share of the Cheniere/CL-131 Fund so that the total amount of all payments in respect of Cheniere/CL-131 Losses will not exceed the Cheniere/CL-131 Losses Cap, (ii) shall simultaneously with its delivery of the Preliminary Cheniere/CL-131 Payment List under Section 5.3.2 above notify each Enrolled Claimant of its preliminarily adjusted pro rata share pursuant to a Notice of Preliminary Award and (iii) shall apprise each Enrolled Claimant that there may be further adjustments to such sum in the event, after the resolution of any appeals, the total amount payable in respect of all Cheniere/CL-131 Losses (prior to such further adjustment) under this Agreement and the MDL Settlement Agreement were to exceed the Cheniere/CL-131 Losses Cap.  In such event, the Claims Administrator shall recalculate the amounts payable to each claimant entitled to a share of the Cheniere/CL-131 Fund, making pro rata reductions as necessary so that the total amount of all payments in respect of Cheniere/CL-131 Losses under this Agreement and the MDL Settlement Agreement will not exceed the Cheniere/CL-131 Losses Cap.

5.3.5    An Enrolled Claimant may appeal the Claims Administrator's decision as to the size of the Award to be made in the form of a Cheniere/CL-131 Losses Payment solely by delivering to the Claims Administrator a Notice of Appeal within ten (10) days of the date of the Notice of Preliminary Award for such Enrolled Claimant delivered by the Claims Administrator in accordance with the terms of Section 4.3.5 above.

5.3.5.1    The Enrolled Claimant shall submit to the Arbitrator and to the Claims Administrator any additional materials in support of his claim as may be requested by the Arbitrator on or before the tenth (10th) day following receipt of such request.

5.3.5.2    Bayer and the Claims Administrator shall have a period of twenty (20) days following the receipt by both the Claims Administrator and the Arbitrator of all materials requested by the Arbitrator in accordance with 5.3.5.1 above to respond to the appeal and submit relevant documentation.

41

5.3.5.3   The Arbitrator shall rule on each appeal within thirty (30) days of the deadline established pursuant to Section 5.3.5.2 above and, in the event no response is filed, the Arbitrator shall rule on each appeal within thirty (30) days of his receipt of the appeal or, if later, the deadline established pursuant to Section 5.3.5.1 above. The ruling of the Arbitrator shall be final, binding and Non-Appealable.

5.3.5.4   If an Enrolled Claimant fails to meet any of the deadlines set forth in this Section 5.3.5, its right to appeal shall be extinguished and the Claims Administrator's decision shall be final, binding and Non-Appealable.

5.3.5.5   If an Enrolled Claimant files a Notice of Appeal and the Enrolled Claimant is not the Prevailing Party in respect of such appeal as determined by the Arbitrator, the Enrolled Claimant shall be liable for the fees and costs of the Arbitrator related to such appeal, which such fees and costs may be deducted from any Settlement Payment to be made with respect to the Enrolled Claimant hereunder.  Likewise, if an Enrolled Claimant files a Notice of Appeal and the Enrolled Claimant is the Prevailing Party in respect of such appeal as determined by the Arbitrator, the Enrolled Claimant shall not be liable for the fees and costs of the Arbitrator related to such appeal, rather Bayer shall be so responsible.  In any event where the Arbitrator's Award is exactly between the parties' positions, then the parties to the arbitration share equally in the costs incurred and there is no Prevailing Party.

5.3.6   Upon the completion of all appeals in accordance with the terms of Section 5.3.5 above, the Claims Administrator shall make any necessary adjustments to the Preliminary Cheniere/CL-131 Payment List in accordance with (i) the rulings by the Arbitrator and (ii) the terms of Sections 5.3.3 and 5.3.4 above, as applicable.  Upon the completion of these calculations, the Claims Administrator shall submit to Bayer and GMB a final Cheniere/CL-131 Payment List (the "Final Cheniere/CL-131 Payment List").

5.3.7   Any term of this Agreement to the contrary notwithstanding, in no event shall the aggregate of all payments in respect of Cheniere/CL-131 Losses (whether under this Agreement or the MDL Settlement Agreement) exceed the Cheniere/CL-131 Losses Cap.

5.3.8   Intentionally Omitted.

**5.4   Other Losses Fund**

5.4.1   The Other Losses Fund is designed to settle, by way of compromise, claims that applicable Enrolled Claimants have for documented economic losses (other than Market Losses) suffered as a consequence of the presence of Bayer GM Rice Seed in the United States rice supply.  Claims for emotional damages of any kind, punitive damages, expenses of counsel and losses occurring after any final determination made by the Arbitrator hereunder are excluded from consideration under the Other Losses Fund process and will not be compensated under this Agreement.  Participation in the Other Losses Fund is limited to those Eligible Claimants who actually farmed the land.  In the event that a landlord is not an Affiliated Claimant for the relevant time period, any payments to an Eligible Claimant under the Other Losses Fund for lost revenue will be reduced by the percentage of Interest of that landlord's share for that land.  If all landlords are Affiliated Claimants for all relevant time periods, then no reduction in payment will occur.

5.4.2   The Other Losses Fund shall be used to pay those Enrolled Claimants who submit an Other Losses Claims Form showing documentable losses (other than Market Losses) and who elect to receive compensation from the Other Losses Fund instead of receiving Cheniere/CL-131 Losses Payments.  The types of losses recoverable from the Other Losses Fund and the documentation required to entitle an Enrolled Claimant to recovery from the Other Losses Fund are set forth in Exhibit Z.  All claims for Other Losses must be submitted pursuant to an Other Losses Claims Form on or before the Other Losses Claims Form Deadline.

5.4.3   As to any Enrolled Claimant who chooses to submit a Completed Claims Package with respect to Cheniere/CL-131 Losses, such Enrolled Claimant

43