# EXHIBIT  D

## (PART 2 OF 2)

is not entitled to submit a claim for any payment from the Other Losses Fund.

5.4.4 The documentation required to substantiate an Other Losses claim will be provided to Bayer and to the Claims Administrator together with the Other Losses Claims Form on or before the Other Losses Claims Form Deadline. The Other Losses Claims Form shall state, by category, the amount claimed by the Claimant. Within forty-five (45) days of receipt of an Other Losses Claims Package, Bayer will notify Claimant's Enrolling Counsel and the Claims Administrator, in writing, of its agreement or disagreement with respect to the Other Losses claim(s) asserted by that Claimant and for each category of claim set forth the amount, if any, that Bayer is willing to pay for the claim. Such agreement or disagreement shall be recorded by the Claims Administrator.

5.4.5 Intentionally Omitted.

5.4.6 Any timely Other Losses claim that Bayer has not disputed, in writing, within forty-five (45) days of receipt of an Other Losses Claims Package will be deemed accepted. As to any Other Losses claim that Bayer has timely disputed, Claimant and Bayer shall attempt, in good faith, to resolve the dispute. If Claimant and Bayer are unable to resolve their dispute concerning the Other Losses claim within sixty (60) days of Bayer's dispute notice (i.e., on or before the Other Losses Claims Package Negotiation Deadline Date), either Claimant or Bayer may inform the other that they intend to declare an impasse. Within ten (10) days of this declaration, Bayer and Claimant may revise their claim or offer by communicating such revision to the other party. If the parties do not achieve resolution of the impasse within such ten (10) days, then, on or before such 10th day, either Claimant or Bayer may notify the Claims Administrator of the impasse pursuant to written notice. Upon being so informed, the Claims Administrator shall within ten (10) days of the receipt of such notice schedule the disputed claim for binding arbitration, which shall be conducted before the Arbitrator, and inform the Arbitrator of each party's most recent claim and offer by category.

5.4.6.1 The Claimant and Bayer shall submit to the Arbitrator any additional materials pertaining to the dispute as they may desire to submit or as the Arbitrator may request on or before the deadline for such submission established by the Arbitrator.

5.4.6.2 The Arbitrator shall rule on any such dispute within thirty (30) days of the deadline established pursuant to Section 5.4.6.1 above.

44

5.4.6.3  The Arbitrator's ruling concerning the disputed Other Losses claim – or any compromise agreement reached by the arbitrating parties prior to the outcome of that arbitration – shall be final, binding and Non-Appealable, and shall be promptly communicated to, and recorded by, the Claims Administrator.

5.4.6.4  All fees and costs payable to the Arbitrator in connection with any arbitration initiated pursuant to the terms of this Section 5.4.6 shall be paid by the party that is not the Prevailing Party, subject to the balance of the terms of this Section 5.4.6.4. In any event where the Arbitrator's Award is exactly between the parties' positions, then the parties to the arbitration share equally in the costs incurred and there is no Prevailing Party. Any such fees and costs owed by a Claimant may be deducted from any Settlement Payment to be made with respect to such Claimant hereunder. Even if the Claimant would otherwise be the Prevailing Party, if the Claimant submits additional material under Section 5.4.6.1 then the Arbitrator shall determine (1) whether those submissions materially changed the submission of the Claimant and (2) if so, then the Claimant shall bear all costs and expenses of the arbitration.

5.4.7  On or before the thirtieth (30th) day after any and all Other Losses claims have been agreed upon or otherwise determined pursuant to binding arbitration, in the manner(s) set forth above, the Claims Administrator shall (y) tally the amount of all such Other Losses claims and (z) promptly notify Bayer and the QSF Administrator of the total amount that is payable in respect of all Other Losses, ("Total Other Losses") subject to the Overall Cap.

5.4.8  Intentionally Omitted.

5.4.9  If the Total Other Losses exceed the Other Losses Cap, each Claimant eligible for a Settlement Payment will receive a reduced payment. In determining the Other Losses Payment to be made to each eligible Claimant the Other Losses Cap shall be multiplied by a fraction, the numerator of which shall be the Enrolled Claimant's Other Losses (prior to adjustment) and the denominator of which shall be the Total Other Losses.

5.4.10  If by examining the total amount of claims made in the Other Losses Claims Form under this Agreement, the Claims Administrator determines that under no circumstances will any payments under this Agreement for Other Losses be affected by the operation of the Overall Cap or the Other Losses Cap, then beginning thirty (30) days after the Other Losses Claims Package Deadline Date, the Claims Administrator shall compile a report

45

every thirty (30) days that lists those Enrolled Claimants who have had all of their Other Losses claims resolved by agreement under Section 5.4.4 or 5.4.6 and the total amount of the resolved claim, (the "Resolved Other Losses List").  Any Enrolled Claimant that has any portion of its Other Losses Claim declared at an impasse and the Claims Administrator notified of such by either party may not be included on the Resolved Other Losses List.  If any Cap may affect the Other Losses payments, then no Resolved Other Losses List shall be created.  Within fifteen (15) days of receipt of each Resolved Other Losses List, Bayer shall  (i) transfer funds electronically to the Qualified Settlement Fund for the benefit of the Enrolled Claimants entitled to Settlement Payments for Other Losses on the Resolved Other Losses List equal, in the aggregate, to the Settlement Payments to be made to Enrolled Claimants for such payments pursuant to this Agreement and taking account of payments already made and in accordance with the instructions accompanying the corresponding list; and (ii) cause notice of such transfer to be delivered to the Claims Administrator and the NCC.  Settlement Payments in respect of Other Losses shall be made from the Qualified Settlement Fund in accordance with the terms of the Qualified Settlement Fund Agreement.

**5.5**     **Limitations on Bayer Funding Obligations**

5.5.1   Any term of this Agreement to the contrary notwithstanding, Bayer shall have no financial obligations under this Agreement other than its express obligations to make Funding Payments as described in this Article.  Bayer shall have no obligation to pay (or to make any Funding Payment on account of), or reimburse any Eligible Claimant, Enrolled Claimant or Enrolling Counsel for, any costs or expenses incurred by such Persons in connection with the Program.  Bayer shall have no responsibility for the management of the Qualified Settlement Fund or any Liability to any Enrolled Claimant arising from the handling of Program Claims by the Claims Administrator.

5.5.2   The total of all Settlement Payments under this Agreement and the MDL Settlement Agreement shall be subject to an overall cap of $750 million or such lower aggregate figure as may be determined in accordance with the terms of Section 3.2.2.3 above (the "Overall Cap") and any term of this Agreement to the contrary notwithstanding, in no event shall the aggregate of all Settlement Payments, whether under this Agreement or the MDL Settlement Agreement, exceed the Overall Cap.  In the event that the total of all Awards under this Agreement plus all awards under the MDL Settlement Agreement ("Overall Awards") exceed the Overall Cap, the Claims Administrator shall reduce the Awards under this Agreement and the awards under the MDL Settlement Agreement as follows:

46

5.5.2.1   First, the total amount of claims to be paid, absent the Overall Cap, but accounting for any reductions in payment under the Cheniere/CL-131 Cap or any Other Losses Cap, shall be determined under this Agreement and the MDL Settlement Agreement. This amount is the "Pre-Cap Total."

5.5.2.2   Second, the total reduction in payments required by the Overall Cap under this Agreement and the MDL Settlement Agreement shall be calculated by subtracting the amount constituting the Overall Cap from the Pre-Cap Total to determine the "Amount Over the Cap."

5.5.2.3   Third, the amounts paid for Market Losses Payments for acre planted in each year 2006 through 2010 under this Agreement and the GMB Agreement shall be reduced by an equal percentage applied to each payment in each settlement until reduced to the Minimum Amount Due. That percentage shall be the lowest percentage necessary to cause the total of all reductions to Market Losses Payments to equal the Amount Over the Cap. Under no circumstance shall Market Losses Payments be reduced to less than the Minimum Amount Due.

- For example, if the combined Market Losses Payments under this Agreement and the GMB Agreement equal $600 million and the Amount Over the Cap equals $10 million, each Market Losses Payment would be reduced by 1.6667% (10/600) such than the Market Losses Payments for each acre planted in each year would be as follows:  $118 for 2006, $78.67 for 2007, $59 for 2008, $39.33 for 2009 and $9.83 for 2010.

- As an additional example, if the combined Market Losses Payments under this Agreement and the GMB Agreement equal $630 million and the Amount Over the Cap equals $40 million, each Market Losses Payment would be reduced by 3.2258% (10/310) such that the Market Losses Payments would be as follows and the remaining reductions would be determined by the methodology below: $116.13 for 2006, $77.42 for 2007, $58.06 for 2008, $38.71 for 2009 and $9.68 for 2010.

5.5.2.4   Fourth, if and only if the maximum collective reductions in the Market Losses Payments determined in accordance with section 5.5.2.3 are less than the Amount Over the Cap, then the remaining difference shall be allocated to the NCC and GMB Agreements as follows:

47

5.5.2.4.1 The total amounts of claims to be paid under each agreement, absent the Overall Cap, but accounting for any reductions in payment under the Cheniere/Cl-131 Cap, any Other Losses Cap, and the operation of Section 5.5.2.3 shall be calculated. These amounts are the "NCC Cap Amount" and the "GMB Cap Amount" and the sum of the two figures is the "Remaining Cap Total."

5.5.2.4.2 The amount constituting the Overall Cap shall be subtracted from the Remaining Cap Total to determine the "Remaining Amount Over the Cap." The Remaining Amount Over the Cap shall be allocated to this Program and the MDL Program by multiplying the Remaining Amount Over the Cap by a fraction, the denominator being the Remaining Cap Total and the numerator being the NCC Cap Amount, or GMB Cap Amount, respectively.

5.5.2.4.3 Fifth, the NCC Pre-Cap Amount and the GMB Pre-Cap Amount shall be reduced using the following methodology:

- For the MDL Settlement Agreement, the portion of the Remaining Amount Over the Cap allocated to the MDL Program (the "NCC Amount Over the Cap") shall be used to reduce all Awards for Other Losses proportionately by subtracting the remaining NCC Amount Over the Cap from the Other Losses payments otherwise due and dividing that figure by the Other Losses payments otherwise due and multiplying all Other Losses payments otherwise due by this fraction. If, and only if, these reductions in Market Losses and Other Losses Awards do not eliminate the NCC Amount Over the Cap, any remaining reduction shall be taken out of all Cheniere/CL-131 Losses Awards proportionately.

- For this Agreement, the Amount Over the Cap allocated to the Program established hereunder (the "GMB Amount Over the Cap") shall be used to reduce all Awards for Cheniere/CL-131 Losses and Other Losses proportionately by subtracting the remaining GMB Amount Over the Cap from the sum of the Cheniere/CL-131 Losses and Other Losses payments otherwise due and dividing that figure by the sum of the Cheniere/CL-131 Losses and Other Losses payments otherwise due and multiplying all

48

Cheniere/CL-131 Losses and Other Losses payments otherwise due by this fraction.

5.5.2.5   All payments to be made to Included Trial Claimants in accordance with this Agreement are included in determining the payments to be made to Enrolled Claimants under this Agreement and shall be treated as Market Losses Awards for all purposes under this Section; however, such payments to Included Trial Claimants shall not be reduced in any way by operation of any Cap. All payments to be made to Included Trial Claimants in accordance with this Agreement except for the Spain Claimants (as such term is defined in Exhibit I attached hereto) shall be allocated to the MDL Program and all payments to be made to the Spain Claimants shall be allocated to this Program. Settlements, if any, of additional cases that had a trial setting for a specific date ("Additional Trial Claimants," identified in Exhibit K) will be treated as Included Trial Claimants under this Section 5.5.2.5 and allocated to the respective GMB or NCC Program based on the definition of Eligible Claimant in these Agreements, however, payments made to Additional Trial Claimants shall be allocated as Market Loss Awards, Cheniere/CL-131 Losses Payments, or Other Losses, as appropriate based on the manner of determination, for the purposes of calculating any Cap. Any payments to Excluded Trial Claimants are not included in determining the payments to be made to Enrolled Claimants under this Agreement. Administrative Expenses also are not included in determining the payments to be made to Enrolled Claimants under this Agreement.

5.5.3   Any term of this Agreement, or Exhibit F, to the contrary notwithstanding, in no event shall Bayer have any obligation to make the Funding Payments unless and until (i) the Qualified Settlement Fund shall have been duly approved by the Court pursuant to the Order, (ii) the Effective Date shall have occurred, and (iii) the time for any such payments as set forth in this Agreement has occurred.

**5.6   Reserves for Payment**

Bayer represents that the statements in (a) Bayer AG's 2010 Annual Report regarding special charges for intended settlement programs on page 69 and 72 and (b) Bayer AG's First Quarter of 2011 Report on page 18 relate to the payments contemplated under this Agreement.

**Article 6 –Claims Administrators/Arbitrator/Qualified Settlement Fund**

49

**6.1      Appointment and Replacement of Administrative Personnel**

6.1.1   This Agreement is a private agreement.

6.1.2   At the request of Bayer and GMB, BrownGreer PLC has agreed to preside over the Program as the Claims Administrator.

6.1.3   Bayer, and GMB shall select an "Arbitrator" (which may be more than one person or firm) within 45 days of the Execution Date. In the event any initial Arbitrator, or any replacement therefor, is not available at the time a Notice of Appeal is delivered in accordance with the terms of this Agreement, Bayer and GMB shall endeavor in good faith to select a mutually acceptable replacement. In the event Bayer and GMB cannot agree upon a replacement within one hundred twenty (120) days of the date of the relevant Notice of Appeal, (y) no later than one hundred thirty (130) days from such date each party shall submit to John Perry two (2) candidates, each of whom is ready, willing and able to serve as the Arbitrator and who is knowledgeable about agriculture and rice farming, and (z) within five (5) days thereafter John Perry shall select the replacement Arbitrator from the submitted candidates. Any Notice of Appeal delivered to the Claims Administrator under this Agreement shall promptly be delivered to the Arbitrator. If more than one natural person or firm has been selected as the Arbitrator, the Claims Administrator shall endeavor to submit Notices of Appeal to such natural persons or firms on a rotating basis, but may exercise its discretion to submit any Notice of Appeal to the natural person or firm that then has the lightest docket of appeals brought under this Agreement or the MDL Settlement Agreement, as applicable.

6.1.4   Bayer shall pay all fees and costs of the Claims Administrator, except as otherwise expressly set forth herein.

6.1.5   Bayer also shall pay all fees and costs of the Arbitrator, except as otherwise expressly set forth herein.

**6.2      Certain General Authority of the Claims Administrator**

6.2.1   The Claims Administrator shall have the authority to perform all actions, to the extent not expressly prohibited by, or otherwise inconsistent with, any provision of this Agreement, deemed by the Claims Administrator to be reasonably necessary for the efficient and timely administration of this Agreement. For the avoidance of doubt, the Claims Administrator shall not serve as the QSF Administrator under the terms of the Qualified Settlement Fund Agreement attached hereto as Exhibit F.

6.2.2   The Claims Administrator may create administrative procedures, supplementary to (and not inconsistent with) those specified herein or in the Exhibits hereto, that provide further specific details about how the

50

Program is to be administered, and/or other aspects of the Program; provided, however, that such procedures comply, or otherwise are not in conflict, with the terms of this Agreement.

6.2.3    Without limitation of the foregoing, the Claims Administrator shall have the authority to modify and/or supplement the form of Enrollment and Claims Form, Cheniere/CL-131 Claims Form and/or Other Losses Claims Form provided for herein to provide for more efficient administration of the Program, provided that (i) such changes may not materially alter the substance of such form or increase the burden of preparing such form without the consent of Bayer and GMB, and (ii) no change shall be made in the form of Release or form of Stipulation of Dismissal without Bayer's and GMB's prior written consent.

6.2.4    Each of Bayer and GMB shall appoint one or two individuals (such number to be determined in each of their respective discretion) to act as a liaison with the Claims Administrator, including answering any questions that the Claims Administrator may have with respect to the interpretation of any provision of this Agreement.

**6.3    Liability of Administrative Personnel**

No Claims Administrator, or employee or agent of any Claims Administrator, shall be liable to any Claimant or any Enrolling Counsel for his acts or omissions, or those of any agent or employee of any Administrator, in connection with the Program except, with respect to each such Person, for such Person's own gross negligence or willful misconduct. Nothing in this Section 6.3 confers on any Program Claimant or Enrolling Counsel any privity of contract with, or other right to institute any action against, any Claims Administrator. In the event that the Claims Administrator must comply with any discovery obligations related to its work under this Agreement, the requesting party bears the cost of complying with such discovery obligation and such work and costs are expressly excluded from this Agreement.

**6.4    Qualified Settlement Fund Agreement**

6.4.1    Prior to the execution and delivery of this Agreement, GMB filed with the Circuit Court of Arkansas County, Arkansas (the "Court") a motion, requesting that the Court issue an order in the form attached hereto as Exhibit G (the "Order") requesting that the Court approve the establishment of the Qualified Settlement Fund. The Court entered the Order, and the Qualified Settlement Fund has been established.

6.4.2    GMB was and is solely responsible for the identification of a Person to serve as QSF Administrator of the Qualified Settlement Fund and for securing such Person's execution and delivery of the Qualified Settlement Fund Agreement attached hereto as Exhibit F.

51

6.4.3   For the avoidance of doubt, Bayer shall in no way be responsible for the expenses of the QSF Administrator. Further, Bayer shall in no way be associated with the administration of the Qualified Settlement Fund or be liable in respect of any dispute between or among any Enrolled Claimants and their respective Counsel in respect of any costs, expenses, legal fees or litigation costs to be deducted from the Qualified Settlement Fund.

6.4.4   The GMB makes no representation or warranties of any kind that the QSF Agreement provides any tax or other benefits to Bayer.

### Article 7 – Certain Litigation Matters

**7.1     Use of Stipulations of Dismissal and Releases Prior to Certain Events**

Except as otherwise provided in this Agreement, the Claims Administrator shall retain control of the Release(s) and Stipulation of Dismissal of any particular Enrolled Claimant until such time as the initial Market Losses Payment is made to such Enrolled Claimant hereunder, at which time each such Release and each such Stipulation of Dismissal shall be delivered to Bayer (and, without limitation, Bayer shall be free to file or cause to be filed such Stipulation of Dismissal and/or Release in any relevant action or proceeding).

**7.2     Pursuit of Certain Claims**

7.2.1   From and after the date on which an Enrollment and Claims Form is submitted in relation to a particular Eligible Claimant until the earlier of (i) the date on which such Eligible Claimant's Release(s) and Stipulation of Dismissal, if any, is delivered to Bayer pursuant hereto or (ii) if applicable, the date such Enrollment and Claims Form is finally rejected by the Claims Administrator or Bayer in relation to such Eligible Claimant pursuant to the terms hereof or such Eligible Claimant exits the Program under circumstances such that his Release(s) and Stipulation of Dismissal, if any, is returned to him, such Eligible Claimant shall:

7.2.1.1 Be prohibited from, and refrain from, taking any action (including any legal action) to initiate, pursue or maintain, or otherwise attempt to execute upon, collect or otherwise enforce any actual or alleged Released Claims against Bayer or any other Bayer Released Party (other than to the extent inherent in making and pursuing a Program Claim in accordance with the terms of this Agreement);

7.2.1.2 Without limitation of Section 7.2.1.1, (i) cooperate in all reasonable respects with Bayer to seek to stay, and to continue in effect any then outstanding stay with respect to, any pending legal proceedings instituted by such Eligible Claimant against Bayer or

any other Released Party and (ii) refrain from instituting any new legal action against any Released Party; and

7.2.1.3  Without limitation of Section 7.2.1.1 or 7.2.1.2, be prohibited from, and refrain from, attempting to execute or collect on, or otherwise enforce, any judgment that may be entered against Bayer or any other Released Party in any legal action described in Section 7.2.1.2.

Further, if such Eligible Claimant exits the Program under circumstances such that his Release(s) remain(s) in effect, in furtherance and not in limitation of such Release(s), any judgment referred to in Section 7.2.1.3 automatically shall be deemed to have been released by such Eligible Claimant, and such Eligible Claimant shall execute such instruments, and take such other actions, as Bayer reasonably may request in order to further evidence or implement the same.

7.2.2   Without limitation of Section 7.2.1 (and in addition to and without limitation of the terms of his Release(s)), each Eligible Claimant shall indemnify and hold harmless Bayer and each other Bayer Released Party from and against (i) any and all Released Claims made or asserted (prior to, on or after the date of such Eligible Claimant's Program Claim) against Bayer or any other Released Party by any Settling Claimant Releasing Party described in such Eligible Claimant's Release(s) for contribution, indemnity (contractual or non-contractual) or otherwise made at any time by such Settling Claimant Releasing Party; and (ii) any and all damages, losses, costs expenses (including legal fees and expenses) and/or Liabilities incurred or suffered by, or imposed on, any Bayer Released Party in connection with, arising out of or resulting from (x) any Released Claim described in clause (i) (including any amount paid or required to be paid in satisfaction of any such Released Claim), (y) any judgment suffered by any Bayer Released Party in any legal action described in Section 7.2.1.2 (including any amount paid or required to be paid in satisfaction of such judgment) arising out of any Released Claim described in clause (i) and/or (z) any violation by such Eligible Claimant of Section 7.2.1.  This Section 7.2.2 shall become null and void in the event that such Eligible Claimant exits the Program under circumstances such that his Release(s) is/are returned to him.  Bayer may set off all or any portion of any amount payable to any Bayer Released Party pursuant to this Section 7.2.2 by an Eligible Claimant against an equal amount of any Funding Payment obligation hereunder in respect of any Settlement Payment from time to time payable under this Agreement to such Eligible Claimant (and such setoff shall be deemed to satisfy, to the extent of the amount of such setoff, both such Funding Payment obligation and the relevant Settlement Payment Obligation to such Eligible Claimant).

**7.3    Trial Claimants**

7.3.1 Within thirty (30) days of the Effective Date, or upon receipt of necessary tax documentation from the Included Trial Claimants, whichever occurs later, Bayer shall pay, or cause to be paid, the judgments directly to such claimants and/or their counsel, including any interest reflected in the judgment through the Effective Date but excluding any costs, then standing and remaining unpaid, rendered in favor of the following Included Trial Claimants, more specifically identified in Exhibit I attached hereto:

1. The MDL Missouri Trial Plaintiffs
2. The First MDL Arkansas & Mississippi Trial Plaintiffs
3. The MDL Louisiana Trial Plaintiffs

7.3.2 As and when corresponding Settlement Payments are transferred to the Qualified Settlement Fund in accordance with this Agreement, Bayer shall pay, or cause to be paid, to the Included Trial Claimants identified below and more specifically in Exhibit I attached hereto such sums as will, when added to the settlements already paid to them, equal the Settlement Payments that would have been paid to such Persons had they been participants in the Program:

1. The Second MDL Mississippi Trial Plaintiffs
2. The MDL Texas Trial Plaintiffs

7.3.3 Within ten (10) days of 1) the execution of this Agreement or 2) the provision of the necessary tax forms, whichever is later, Bayer shall pay the Spain plaintiffs the amount of $636,000.

**Article 8 – Attorneys' Fees and Litigation Costs**

**8.1  Individual Counsel Attorneys' Fees**

8.1.1 Neither Bayer nor any other Bayer Released Party shall have any responsibility whatsoever for the payment of any Enrolled Claimant's attorneys' fees or costs.

8.1.2 GMB and each Enrolled Claimant understands and agrees that any Award determined by the Claims Administrator as being payable to an Enrolled Claimant may be subject to deduction for attorneys' fees, common benefit fees or reimbursement of litigation costs, that if required pursuant to a court order, Bayer may direct the Claims Administrator to direct the QSF Administrator to make Settlement Payments only after deduction for such fees and/or costs, and that the QSF Administrator shall make all Settlement Payments owed in relation to any particular Program Claim

54

pursuant to this Agreement in accordance with the terms of Exhibit F attached hereto.

8.1.3   Any division of any Settlement Payment with respect to, and as between, any Enrolled Claimant and his respective counsel is to be determined by, and in accordance with, the terms and venue provisions of Exhibit F attached hereto, and any such division, or any dispute in relation to such division, shall in no way affect the validity of this Agreement or any Release or Stipulation of Dismissal executed by any Enrolled Claimant or his Counsel, as applicable.  Nothing in this Section 8.1 limits or qualifies Article 10 hereof.

## 8.2   No Common Benefit Fees and Reimbursement of Litigation Costs

Each Enrolled Claimant expressly agrees that this state court settlement, and payments to be made hereunder, shall not be subject to any common benefit assessment for fees or reimbursement of litigation costs and further agree that any party seeking such an assessment shall have to file a motion to recover such amounts from the Qualified Settlement Fund, pursuant to the terms and venue provisions set forth in the Qualified Settlement Fund Agreement.  Upon satisfaction of its obligation(s) to make Funding Payments hereunder, Bayer's obligation to make payments to or for the benefit of any Enrolled Claimant or any counsel to such Enrolled Claimant shall be fully satisfied.

## Article 9 – Quality Control and Audit Procedures

## 9.1   Prevention and Detection of Fraud – General

9.1.1   Bayer and the Claims Administrator shall have the authority, but not the obligation, to institute claim-auditing procedures and other procedures designed to detect and prevent the payment of fraudulent Program Claims, at Bayer's sole cost and expense.  To the extent that Enrollment and Claims Packages from certain Enrolling Counsel exhibit unusual levels of potential fraud, Bayer expressly has the authority in its sole discretion to audit all Enrollment and Claims Packages from such Enrolling Counsel.

9.1.2   Bayer shall notify the Claims Administrator and GMB, as well any as any implicated Enrolled Claimant and his Counsel, of any indicia of deception, dishonesty or fraud of which it becomes aware relating to any Program Claim or in any way relating to the Program; Bayer shall have no Liability for defamation in respect of any such contention.  The Eligible or Enrolled Claimant and/or his Counsel shall have the right to contest such suggestion of misconduct to the Arbitrator by requesting a hearing within ten (10) days of receiving such notice.  The Arbitrator may promulgate and revise rules for reviewing and resolving allegations of deception, dishonesty, or fraud.  Any resulting resolution of such allegations shall be final, binding, and Non-Appealable.

     9.1.3   No Settlement Payment may be paid in respect of a Program Claim while that Program Claim is the subject of an audit by Bayer for good cause, subject to the resolution of any arbitration instituted pursuant to the terms of Section 9.1.2 above.

**9.2    Consequences of Fraud; Failure to Detect Fraud**

Anything to the contrary set forth in this Agreement notwithstanding, no Enrolled Claimant shall have any claim against Bayer, the Claims Administrator or Arbitrator in respect of any fraudulent Program Claim, whether or not detected pursuant to the terms of this Article 9, and no Enrolled Claimant shall have any claim against Bayer, the Claims Administrator or Arbitrator in the event of any failure to detect a fraudulent Program Claim. Enrolled Claimants who submit fraudulent claims as determined under Section 9.1.2 forfeit any benefit they or any Affiliated Claimant receive or may receive under this Agreement and their Releases remain valid and enforceable. In addition, Bayer expressly retains all remedies against Enrolled Claimants and/or his Counsel for fraudulent submissions.

**Article 10 – Liens**

10.1    Intentionally Omitted.

10.2    Prior to receiving any Settlement Payment, each Enrolled Claimant shall represent and warrant that any and all Liens with respect to any and all Settlement Payments (and/or the right to receive any and all such Settlement Payments) have been satisfied and discharged.

10.3    In any event and any term of this Agreement to the contrary notwithstanding, satisfaction and discharge of any and all Liens, whether past, present or future, whether known or unknown or asserted or unasserted, with respect to any Settlement Payment (and/or the right to receive any Settlement Payment) are the sole responsibility of the relevant Enrolled Claimant. In relation to any particular Enrolled Claimant, satisfaction and discharge of any and all Liens must be established to the satisfaction of the Claims Administrator and Bayer before any Settlement Payment can be disbursed to such Enrolled Claimant (and before Bayer shall be required to make any Funding Payment in respect of any such Settlement Payment). Upon request to the Claims Administrator, Bayer shall be entitled to proof of satisfaction and discharge of any or all such Liens in relation to any particular Enrolled Claimant.

10.4    The foregoing provisions of this Article 10 are solely for the several benefit of Bayer and the Claims Administrators. No Enrolled Claimant or his Counsel shall have any rights or defenses based upon or arising out of any act or omission of Bayer or any Claims Administrator with respect to this Article 10.

10.5    In addition to and without limitation of any of the foregoing provisions of this Article 10, each Enrolled Claimant shall indemnify, defend and hold harmless Bayer from and against (i) any and all claims made or asserted at any time against Bayer, by any Person at any time holding or asserting any Lien in relation to, or

56

any other Person at any time claiming by, through or under, such Enrolled Claimant with respect to any Funding Payment or Settlement Payment paid or to be paid on account of such Enrolled Claimant's participation in the Program (or the right to receive any such Settlement Payment) and (ii) any and all damages, losses, costs, expenses (including reasonable and documented fees and disbursements of counsel and other professions and including the costs of enforcing this Section 10.5) or Liabilities incurred or suffered by, or imposed on, Bayer in connection with, arising out of or resulting from any claim described in clause (i) (including any amount paid or required to be paid in satisfaction of any such claim).

10.6   Intentionally Omitted.

**10.7   Lien Reporting Obligations**

Barbara Wright of the Division of Medicare Debt Management on May 24, 2011 provided the parties with a statement that these "settlements are not required to be reported pursuant to 42 USC 1395y(b)(8)." In reliance on this statement, the parties are not reporting these payments under the Medicare Secondary Payer Act or the Medicare, Medicaid and SCHIP Extension Act of 2007. If, for whatever reason, this statement by Ms. Wright ceases to be valid or Bayer has reasonable concern regarding its validity, the GMB agree to cooperate with Bayer to promptly institute procedures for complying with the reporting requirements of these Acts.

### Article 11 – Compromise of Claims

**11.1   Compromise of Claims**

11.1.1   This Agreement is an effort to compromise the claims made by Claimants which were disputed as to validity and/or amount and this Agreement may not be used by anyone as evidence of negligence or liability of any kind by Bayer, provided, however, that nothing in this Agreement shall be construed to prevent Bayer from pleading or otherwise proving its status as a joint tortfeasor for the purpose of seeking contribution from any Additional Released Party.

11.1.2   No party, no Enrolling Counsel, and no Eligible or Enrolled Claimant shall seek to introduce and/or offer the terms of this Agreement, any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, or any statements in any documents delivered in connection with this Agreement, or otherwise rely on the terms of this Agreement, in any judicial or arbitral proceeding, except (1) Bayer may use this Agreement to seek contribution from any of the Additional Released Parties for payments made under this Agreement and (2) insofar as it is necessary to enforce the terms of this Agreement (or in connection with the determination of any income tax Liability of a party) or any instrument executed and delivered pursuant to this

57

Agreement (including any Claims Form and any attachments or exhibits thereto). If a Person seeks to introduce and/or offer any of the materials described herein in any proceeding against Bayer or any Bayer Released Party, Bayer and any such Bayer Released Party may seek to enforce the terms of this Section 11.1.2 against such Person and the restrictions of this Section 11.1.2 shall not be applicable to Bayer or any such Bayer Released Party with respect to that Person.

11.1.3 Nothing in this Article 11 applies to (i) any action to submit into evidence in any legal proceeding (past, present or future), or otherwise to file or enforce in any manner, or (ii) any other action by Bayer in relation to, any Release or any Stipulation of Dismissal that is released or provided to Bayer in accordance with the terms of this Agreement.

### Article 12 – Public Statements; Confidentiality

**12.1   Claimant Information**

The amount of any individual payment or Award made to an Enrolled Claimant under this Agreement (such amount information, "Award Information"), shall be kept confidential by Bayer, the Claims Administrator and the QSF Administrator and shall not be disclosed except (i) to appropriate Persons to the extent necessary to process Program Claims or provide benefits under this Agreement, (ii) as otherwise expressly provided in this Agreement, (iii) as may be required by law, lawful compulsory order or listing agreements, (iv) as may be reasonably necessary in order to enforce, or exercise Bayer's rights under, or with respect to, such Enrolled Claimant's Claims Form(s), Release(s), Stipulation(s) of Dismissal or (with respect to such Enrolled Claimant or his Counsel, as applicable) this Agreement or (v) in any action brought by Bayer for contribution against any Additional Released Party, provided that such Award Information shall be protected by the highest level of confidentiality available under the protective order in such case. All Enrolled Claimants shall be deemed to have consented to the disclosure of the Award Information for these purposes.

**12.2   Accurate Public Statement**

Before the time that notice has been provided to all parties that the last signature has occurred by any party to the GMB or NCC Agreement, no party shall issue any release or make any public statement regarding the Agreement. The MDL Settlement Agreement shall have the same restriction on issuing any release or making any public statement regarding the Agreement. With the exception of Section 12.1, nothing herein limits any Party's ability to provide accurate information in response to questions or inquiries about the Program.

### Article 13 – Intentionally Omitted

58

## Article 14 – Miscellaneous

**14.1   Notice by Parties**

14.1.1   Any notice, request, instruction or other document to be delivered pursuant to this Agreement shall be sent to the appropriate party as follows, or as otherwise instructed by a notice delivered to the other Party pursuant to this Section 14.1.1.  Notice may be provided by: (i) U.S. first class, certified mail, return receipt requested; (ii) to the extent specified hereunder, electronic mail (provided evidence of delivery is provided to the sender); (iii) facsimile, with a confirming copy sent within one day by regular U.S. mail; (iv) prepaid courier; (v) Federal Express, or (iv) personal delivery:

14.1.1.1   If to Bayer:

John Galvin – jgalvin@foxgalvin.com

14.1.1.2   If to any GMB Client:

(a) Martin Phipps – mphipps@gpplaw.com; and

(b) Mikal Watts – mcwatts@wgclawfirm.com

14.1.1.3   If to GPP:

Martin Phipps – mphipps@gpplaw.com

14.1.1.4   If to MCWPC:

Mikal Watts – mcwatts@wgclawfirm.com

14.1.1.5   If to Murray:

Steve Murray – smurray@murray-lawfirm.com

14.1.2   Bayer may for all purposes of this Agreement treat the counsel specified in accordance with Section 2.3 as such Enrolled Claimant's Counsel, unless and until otherwise advised by both such Enrolled Claimant and such counsel.

14.1.3   Any notice, request, instruction or other document to be given by any party or any Claims Administrator to any Enrolled Claimant or his Counsel hereunder, shall be in writing and delivered in accordance with the terms of Section 14.1.1 above, and such party or Claims Administrator may rely on the contact information last provided by the Enrolled Claimant or his Counsel to such party or Claims Administrator, as

applicable, and no party nor any Claims Administrator shall have any obligation to (but in its sole and absolute discretion may) take other steps to locate Enrolled Claimants or Counsel as to whom notices, requests, instructions or other documents have been returned as undelivered or undeliverable. Each Enrolled Claimant and (if applicable) his Counsel shall have the responsibility to keep the Claims Administrator informed of the correct contact information for both such Enrolled Claimant and such Counsel.

14.1.4  Any such notice, request, instruction or other document shall be deemed to have been given as of the date so transmitted by facsimile or electronic mail, on the next Business Day when sent by Federal Express, or five Business Days after the date so mailed, provided that if any such date on which any such notice or other communication shall be deemed to have been given is not a Business Day, then such notice or other communication shall be deemed to have been given as of the next following Business Day and, provided, further, that delivery otherwise shall be deemed to occur upon tender and rejection by the intended recipient.

**14.2    Receipt of Documentation**

Anything to the contrary set forth in Section 14.1 above notwithstanding, any form or other documentation required to be served or submitted under this Agreement shall be deemed timely (i) if delivered by mail (and not required to be delivered in some other fashion), if postmarked (or, in the absence of a postmark or if such postmark is illegible, if received) on or before the date by which it is required to be submitted under this Agreement or (ii) if delivered (and expressly permitted or required to be delivered) by electronic mail, when sent (provided that the sender can produce reasonable evidence of the same).

**14.3    Governing Law**

This Agreement shall be governed by and construed in accordance with the law of the State of Arkansas without regard to any choice-of-law rules that would require the application of the law of another jurisdiction. However, with respect to the distribution of funds from the Qualified Settlement Fund, and any claim for attorneys' fees arising therefrom, GMB and any Enrolled Claimants who become bound by the terms of this Agreement agree that any disputes shall be resolved pursuant to the choice-of-law and venue provisions contained in Exhibit F.

**14.4    Waiver of Inconsistent Provisions of Law; Severability**

14.4.1   To the fullest extent permitted by applicable law, each party, each Eligible Claimant and each Enrolled Claimant waives any provision of law (including the common law), which renders any provision of this Agreement invalid, illegal or unenforceable in any respect.

14.4.2   Any provision of this Agreement which is prohibited or unenforceable to any extent or in any particular context shall be ineffective, but such ineffectiveness shall be limited as follows: (i) if such provision is prohibited or unenforceable only in or as it relates to a particular jurisdiction, such provision shall be ineffective only in or as it relates to (as the case may be) such jurisdiction and only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability in or as it relates to (as the case may be) such jurisdiction shall not otherwise invalidate or render unenforceable such provision (in such or any other jurisdiction); (ii) if (without limitation of, and after giving effect to, clause (i)) such provision is prohibited or unenforceable only in a particular context (including only as to a particular Person or Persons or under any particular circumstance or circumstances), such provision shall be ineffective, but only in such particular context; and (iii) without limitation of clauses (i) or (ii), such ineffectiveness shall not invalidate any other provision of this Agreement.  In any event, upon any such determination that any term or other provision is invalid, illegal or unenforceable, the parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible to the fullest extent permitted by applicable law.  Nothing in this Section 14.4.2 is intended to, or shall, limit (1) Section 14.4.1 or (2) the intended effect of Section 14.3.

**14.5    Good Faith Negotiations**

The parties recognize and acknowledge that each of the parties hereto is represented by counsel and that such party received independent legal advice with respect to the advisability of entering into this Agreement.  Each of the parties acknowledges that: the negotiations leading up to this Agreement were conducted regularly and at arm's length; this Agreement is made and executed by and of each party's own free will; each party knows all of the relevant facts and its rights in connection therewith; and it has not been improperly influenced or induced to make this settlement as a result of any act or action on the part of any party or employee, agent, attorney or representative of any party.  The parties further acknowledge that they entered into this Agreement because of their desire to avoid the further expense and inconvenience of litigation and other disputes and to compromise permanently and settle the claims between any Enrolled Claimant, on the one hand, and Bayer, on the other hand, settled by the execution of this Agreement.

### 14.6   Construction

With regard to each and every term and condition of this Agreement, the parties hereto understand and agree that the same have or has been mutually negotiated, prepared and drafted, and if at any time the parties thereto desire or are required to interpret or construe any such term or condition or any agreement or instrument subject hereto, no consideration shall be given to the issue of which party thereto actually prepared, drafted or requested any term or condition hereof.

### 14.7   Entire Agreement

This Agreement contains the entire agreement between the parties with respect to the subject matter hereof and supersedes and cancels all previous agreements, negotiations and commitments between the parties hereto (oral or otherwise) with respect to the subject matter hereof.

### 14.8   Headings; References

The headings of the sections, paragraphs and subsections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement. Any reference to an Exhibit shall be deemed to refer to the applicable Exhibit attached hereto. The words "include" and "including" and words of similar import when used in this Agreement or any Exhibit hereto are not limiting and shall be construed to be followed by the words "without limitation," whether or not they are in fact followed by such words. The definitions contained in this Agreement or any Exhibit attached hereto are applicable to the singular as well as the plural forms of such terms. Words of any gender (masculine, feminine, neuter) mean and include correlative words of the other genders. As used herein or in any Exhibit hereto, the term "dollars" and the symbol "$", shall mean United States dollars. References herein to instruments or documents being submitted "by" any Person include (whether or not so specified) submission of the same on behalf of such Person by his Counsel whether or not so specified, provided that if any particular instrument or document is required herein to be executed by a particular Person, it must (unless otherwise expressly specified herein) be so executed by such Person. References herein to any particular Section (such as, for example, Section 4.2) shall be deemed to refer to all sub-Sections of such Section (such as, for example, Section 4.2.1, 4.2.2, etc.), all sub-sub-Sections of such sub-Sections, and so on; the corresponding principle applies to all references herein to any particular sub-Section, sub-sub-Section and so on. The words "this Agreement", "herein", "hereof", "hereby", "hereunder" and words of similar import refer to this Agreement as a whole (together with any Exhibits attached hereto) and not to any particular subdivision unless expressly so limited or the context requires otherwise. Any reference herein to this Agreement shall be deemed to include this Agreement as it may be modified, varied, amended or supplemented from time to time.

### 14.9   No Third Party Beneficiaries; Assignment

14.9.1  No provision of this Agreement or any Exhibit attached hereto is intended to create any third-party beneficiary hereto or thereto except as expressly set forth herein or therein. For the avoidance of doubt, nothing in this Section 14.9 limits or modifies the third-party beneficiary provisions of

any Claims Form, Release or Stipulation of Dismissal. This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns; provided, however, that neither this Agreement nor any of the rights, interests, or obligations hereunder may be assigned by any of GPP, MCWPC, Banks or any GMB Client who becomes a party hereto without the prior written consent of Bayer. Any assignment in violation of this Section 14.9.1 shall be null and void ab initio.

14.9.2 Without limitation of Section 14.9.1 but also without limitation of any GPP's MCWPC's or Bank's right to enforce this Agreement, no Eligible Claimant or Enrolled Claimant shall have any right to institute any proceeding, judicial or otherwise, against any of Bayer, any of GPP, MCWPC, and Banks, any Claims Administrator or the Arbitrator to enforce, or otherwise with respect to, this Agreement.

### 14.10   Amendments; No Implied Waiver

This Agreement may be amended by (and only by) an instrument signed by Bayer, on the one hand, and by GMB, on the other hand. Except where a specific period for action or inaction is provided herein, no failure on the part of a party to exercise, and no delay on the part of any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof; nor shall any waiver on the part of any party of any such right, power or privilege, or any single or partial exercise of any such right, power or privilege, preclude any other or further exercise thereof or the exercise of any other right, power or privilege; nor shall any waiver on the part of any party, on any particular occasion or in any particular instance, of any particular right, power or privilege operate as a waiver of such right, power or privilege on any other occasion or in any other instance.

### 14.11   Counterparts; Facsimile Signature

This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which shall together constitute one and the same instrument. It shall not be necessary for any counterpart to bear the signature of all parties hereto. This Agreement and any amendments hereto, to the extent signed and delivered by means of a facsimile machine or electronic scan (including in the form of an Adobe Acrobat PDF file format), shall be treated in all manner and respects as an original agreement and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

### 14.12   Tax Matters

The parties agree to characterize the monies comprised of Market Losses, the Cheniere/CL-131 Fund and Other Losses Fund for federal, state and local income tax purposes in such manner as is reasonably determined by Bayer, including without limitation as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468B-1 or as a grantor trust pursuant to an election under Treasury Regulation Section 1.468B-1(k) or otherwise. Bayer shall timely provide the QSF Administrator, and GMB shall cause the QSF Administrator to

63

provide Bayer, with such material and relevant information as and to the extent reasonably requested by Bayer or the QSF Administrator, as applicable, in connection with any tax filing or the payment of any taxes or any private letter ruling regarding the tax status of the funds.

### 14.13   Further Assurances

From time to time following the Execution Date, (i) each party shall take such reasonable actions consistent with the terms of this Agreement as may reasonably be requested by any other party, and otherwise reasonably cooperate with each other party in a manner consistent with the terms of this Agreement as reasonably requested by each such other party, and (ii) each Enrolled Claimant and his Enrolling Counsel shall take such reasonable actions consistent with the terms of this Agreement as may reasonably be requested by Bayer or by GMB, and otherwise reasonably cooperate with Bayer and GMB in a manner consistent with the terms of this Agreement as reasonably requested by Bayer or GMB, in the case of each of (i) and (ii) as may be reasonably necessary in order further to effectuate the intent and purposes of this Agreement and to carry out the terms hereof.  To the extent such actions shall be made by counsel, such actions shall be consistent with their duties to their clients who are parties to this Agreement.

### 14.14   Specific Performance

It is understood and agreed by the parties that money damages would not be a sufficient remedy for any breach of this Agreement by any party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach in addition to any other remedy available at law or in equity, without the necessity of demonstrating the inadequacy of money damages.

### 14.15   Additional Released Parties

Bayer may seek contribution from any Additional Released Party.  This Agreement and the Release extinguish any and all Liability on behalf of the Additional Released Parties to the Enrolled Claimants in any way growing or arising out of the detection in the United States rice supply of Bayer GM Rice Seed.  As a condition of participating in this Agreement, Claimants waive any opportunity or right to intervene or voluntarily participate, and agree not to intervene or voluntarily participate, in any lawsuit brought by any Bayer entity seeking contribution, or recovery in any form, for funds paid under this Agreement against any of the Additional Released Parties, even if such lawsuit adversely affects Claimant's interest in any such party. Anything to the contrary in this Section 14.15 notwithstanding, no Claimant shall be required to act, or refrain from acting, in such a way as to violate a fiduciary duty owed to any Additional Released Party.  For the avoidance of doubt, each Claimant agrees that no such fiduciary duty arises from membership or stock ownership of any Additional Released Party.

### 14.16   Computing Dates

For all deadlines under this Agreement, to compute deadlines (a) exclude the day of the event that triggers the period; (b) count every day, including intermediate Saturdays, Sundays and legal holidays; and (c) include the last day of the period, but if the last day is a Saturday, Sunday or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday.

64

**14.17   Further Judicial Rulings**

Notwithstanding any rulings or decisions by the U.S. Court of Appeals for the Eighth Circuit, the Circuit Court of Arkansas County, Arkansas, the Eastern District of Missouri or any other court that does not address this Agreement, this settlement will proceed pursuant to the terms and conditions set forth above.

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the Execution Date.

Bayer

_____
[INSERT NAME/TITLE]
On Behalf of each of the Persons identified
within the definition of the term "Bayer"
July ___, 2011

Goldman Pennebaker and Phipps, P.C.

_____
Martin Phipps
July 1, 2011

Mikal C. Watts P.C.

_____
Mikal C. Watts
July 2, 2011

BANKS LAW FIRM, P.L.L.C.

_____
Chuck Banks
July 2, 2011


_____
The Murray Law Firm

Steve Murray
July ___, 2011


66

# Exhibit B

## THE GPP/MCWPC/BANKS ARKANSAS STATE COURT RICE CASES
## QUALIFIED SETTLEMENT FUND AGREEMENT

### ARTICLE I
### NAME AND PURPOSE OF THE TRUST

**1-1   Name.** This Qualified Settlement Fund shall be known as The GPP/MCWPC/BANKS ARKANSAS STATE COURT RICE CASES QUALIFIED SETTLEMENT FUND (hereinafter "Fund") and is intended to qualify as a Qualified Settlement Fund within the meaning of Section 468B of the United States Internal Revenue Code and United States Treasury Regulation 1.468B-1.

**1-2 Purpose.** The purpose of the Fund is to accept, hold and distribute funds paid by Defendants in consideration of the settlement of claims against Defendants and a full and final release of said Defendants.  The legal entity known as a Qualified Settlement Fund is authorized under Section 468B of the Internal Revenue Code of 1986 (Title 26, United States Code), as amended ("IRC") and Income Tax Regulations ("Regulations") §§ 1.468B-1, et seq. This fund exists to resolve or satisfy the claims, actions, and lawsuits arising out of Case No. CV-2008-108, *Scott Meins, et al. v. Bayer AG, et al.*, in the Circuit Court of Arkansas County, Arkansas, Stuttgart Division, and all claims included in the GMB Settlement, a claim arising out of a tort, or violation of law, as provided for in Regulations § 1.468B-1. Allocation issues exist as to the settlement, including but not limited to allocation among the plaintiffs and various attorneys, payment of fees and litigation expenses, potential liens and other unresolved matters. It is in the best interests of the Plaintiffs that the money be paid into a Fund which earns income rather than held by the Defendant while those issues are being resolved.

**1-3 Duties.** The Duties of the Trustee shall be as defined in this Agreement.

**1-4 Government Authority.** This Fund shall be administered and operated pursuant to this Agreement.  To the extent that there is any dispute of the administration and payouts to be made by this fund, or need for a court order to terminate this fund, such matters shall be resolved by a suit being filed in the county courts of law in Nueces County, Texas, and such Court shall have exclusive jurisdiction over any disputes as to the administration and payouts to be made by this Fund, and any issues concerning the termination of this fund.

### ARTICLE II
### PAYMENTS TO THE FUND

**2-1 Full and Final Release of Defendants.**   In February, 2011, the trial court of Arkansas County, Arkansas, approved the establishment of the Fund pursuant to IRC section 468B. Pursuant to the Order, the Fund is created for the benefit of Plaintiffs and their attorneys, and such other entity or entities to which

1

distributions may be made pursuant to the GMB settlement.  Upon payment to the Fund, the Defendants have no further obligation in this matter.

**2-2 Payment by Defendants.** Pursuant to that certain Arkansas State Court Rice Cases Settlement Agreement executed in February, 2011, and that subsequent GMB settlement executed in late-June, 2011, Defendants have agreed to make contributions to the Fund. All such contributions, together with the earnings thereon, shall be held as a fund for the satisfaction of claims, costs, and expenses which are incurred by the Trustee of the Fund, as provided in this Agreement.

**2-3 No Further Obligation for Defendant.** Following the above contributions to the Fund, Defendants shall have no further obligation to contribute to the Fund, as set forth in the Order Approving the Establishment of The GPP/MCWPC/BANKS Arkansas State Court Rice Cases Qualified Settlement Fund.

**2-4 Nature of Contributions.** All contributions to the Trustee of the Qualified Settlement Fund shall be made in immediately available funds to be wired to the Fund's account. Contributions made to the Qualified Settlement Fund shall not be construed as fines, penalties, monetary sanctions, or punitive damages.

## ARTICLE III
## DISPOSITION OF THE FUND

**3-1 Corpus of the Trust.** The corpus of the Trust shall include: (a) all sums transferred to the Trust pursuant to a settlement with Transferor; and (b) all income derived from any of the above assets of the Trust.

**3-2 Payment of Income and Principal.** During the term of the Fund, the Trustee shall pay or apply part or all of the income and principal of the Fund in order to settle the claims of the following case: Case No. CV-2008-108, *Scott Meins, et al. v. Bayer AG, et al.*, in the Circuit Court of Arkansas County, Arkansas, Stuttgart Division, and each of the Plaintiffs represented by Goldman, Pennebaker and Phipps ("GPP"), Mikal C. Watts, P.C. ("MCWPC") and Chuck Banks ("Banks") (collectively referred to herein as "GPP/MCWPC/Banks"), and others represented by the Murray Law Firm, who have intervened their cases into said style and case number, and/or all Plaintiffs settling their claims under the GMB settlement. This includes paying the legal fees, litigation costs and expenses incurred by the Plaintiffs in prosecuting claims. Any disputes concerning the payment or allocation of legal fees, litigation costs and expenses shall first be determined under the settlement agreement.  Otherwise, the Plaintiffs, and each of their attorneys agree that any such dispute over fees shall be decided in an action to be filed in the County Courts of Law, Nueces County, Texas.  The Trustee is not responsible for the payment of any other claims other than those filed in the above case.

2

**3-3 No Authority to Conduct Business.** The purpose of the Fund is limited to the matters set forth in Article III hereof, and this agreement shall not be construed to confer on the Trustee any authority to carry on any business or activity for profit.

**3-4 Termination of The Fund.** The Fund may be terminated upon the earlier of: (i) the date on which no assets remain in the Fund; or (ii) the date on which the Fund has discharged all obligations required of it, and any disputes therein resolved by a court order made by the applicable County Court of Law, Nueces County, Texas. Whenever the Trustee determines that the Fund may be properly terminated pursuant to this Article, the Trustee may submit a petition for termination of the Fund to the applicable County Court of Law, Nueces County, Texas. After reviewing the petition, the applicable County Court of Law, Nueces County, Texas may terminate the Fund or may order the Fund to undertake such further actions as that Court deems necessary and appropriate. Upon Order of that Court, the Trustee shall finalize distributions to beneficiaries except for amounts necessary to compensate the Trustee and its professional agents for unpaid services and costs of administration, and any funds that may be reserved for the payment of taxes or outstanding charges or fees, upon termination of the Fund. The Trustee shall distribute pursuant to such Court Order all remaining funds held by the Trustee. Any net income (income after taxes and related expenses as defined in this agreement) remaining after all fees, costs, taxes, and expenses are paid shall be distributed to the Plaintiffs on a pro rata basis or as ordered by that Court in the order terminating the Fund.

**3-5 Amendments, Alterations, and Revocation.** The Fund may be amended or altered from time to time, or revoked by an instrument in writing executed by the Trustee only after approved by the Court.

**3-6 Allocation Plan and Distributions.** The Trustee shall distribute to Plaintiffs the amounts due and owing to Plaintiffs from the Fund available for distribution pursuant to the GMB settlement agreement, or as approved and ordered by the Court or as approved and agreed upon in writing by Plaintiffs and Plaintiffs' counsel in this suit. No distributions from the Fund shall be made except upon direction from the Trustee.

**3-7 Interests in the Trust.** No interest in this Fund may be assigned or transferred in any manner, unless approved by the Court. In addition, such interests shall not be voluntarily or involuntarily subject to any type of encumbrance, to the maximum extent allowable by law. This shall include, but not be limited to, encumbrances associated with claims of any creditor (in or outside of bankruptcy or other insolvency statutory schemes) under any federal, state, or local laws. Any such interest, if any, shall be made available only upon termination of the Fund.

## ARTICLE IV
## TRUSTEE MANAGEMENT

**4-1 Initial Trustee/Trustee.** The initial trustee of this Fund shall be Charles Kaffie, KAFFIE INVESTMENT CO., LP, 615 North Upper Broadway, Suite 1290, Corpus Christi, Texas, 78401 (hereinafter referred to as "Trustee"). The Trustee is independent of the Transferor and independent of each Beneficiary.

**4-2 Investment and Reinvestment.** Except as set forth below in article 4-4 the Trustee shall invest and reinvest the principal and income of the Fund and keep the Fund invested (a) in one or more money market accounts, which shall be treated as a single fund without distinction between principal and income; (b) in FDIC-Insured interest-bearing accounts or instruments; (c) in obligations of the United States, its instrumentalities, or its agencies, or in United States Government securities money markets or mutual funds, (d) cash, or (e) insured municipal securities.

**4-3 Definition of Money Market Account.** For purposes of this paragraph, "money market account" shall mean a money fund whose objectives are (a) current income consistent with liquidity and low risk, (b) the maintenance of a portfolio of high quality, short-term money market instruments, and (c) maintenance of a constant $1.00 net asset value per share. All investments shall be made so as at all times to provide sufficient liquidity to meet the anticipated cash needs of the Fund. In investing, reinvesting, and exchanging, selling, and managing the Fund, the Trustee shall discharge its duties with respect to the Fund solely in the interest of the accomplishment of the purposes and objectives of the Fund.

**4-4 Collection of Funding Instrument.** Trustee is authorized to deposit funding instrument(s) into an FDIC/SCIPIC insured bank, even though the amount of the deposit exceeds the current FDIC/SCIPIC insured deposit amount for that single QSF account for such time as it takes to collect on said funding instrument. Once the funding instrument is collected and made available by the depository bank, Trustee shall as soon as practical move the proceeds into one or more of the accounts set forth in 4-2 above.

**4-5 Reporting to the Court.** The Trustee shall create and maintain records of the Trustee's activities arising from this Fund Agreement and any orders of a Court. The records shall be created and maintained in a manner that is ordinary and customary for the obligations imposed by any Court Order or this Agreement. Copies of the records shall be provided to a Court upon its request, subject to any privileges or other protections. Any privileged or otherwise protected material shall be provided under seal to a Court. Upon termination of the Fund, all privileged or otherwise protected records shall be returned to the Trustee.

## ARTICLE V
## EXPRESS POWERS OF TRUSTEE

Without in any way limiting the power and discretion conferred upon the Trustee by the other provisions of this Fund or by law, the Trustee is expressly authorized and empowered as hereinafter set forth:

**5-1 Payment of Administrative Expenses and Costs.** As the Trustee incurs, it shall pay any and all charges, taxes and expenses imposed upon or incurred in connection with the Fund in the discharge of its obligations under this Fund, including, without limitation, the fees and costs associated with investment advisors, accountants, agents, managers, attorneys, actuaries, auditors, or insurers, which are incurred to maintain and administer the trust. All such payment shall be made from Fund assets.

**5-2 Retention of Property.** The Fund shall hold the property in the manner delineated in this Agreement.

**5-3 Preservation of Principal.** Notwithstanding any other provision in this Agreement, the Trustee shall at all times hold, manage, invest, and reinvest the assets of the Fund in a manner designed to preserve the accrued income and principal of the Fund for the purposes set forth in this agreement.

**5-4 Grant of Powers Limited.** The trustee shall not be empowered to dispose of the Corpus of the Trust for less than adequate and full consideration in money or money's worth unless expressly authorized by the Court following a duly noticed petition.

**5-5 Retention of Investment Advisor and Other Consultants.** The Trustee has the power to engage the services of investment advisors, accountants, custodians, managers, attorneys, or other consultants or agents, as is reasonably necessary to assist with the management of investments and the administration of the Fund. The initial Trustee is Charles Kaffie, an investment and financial advisor, and structured settlement specialist, in the state of Texas. If the initial Trustee is required to act outside of his role as Trustee and, instead, acts in his capacity as an investment advisor, he shall be compensated for his work as an investment advisor in addition to his monthly administrative fee.

**5-6 Execution of Documents.** The Trustee has express authority to make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments, including but not limited to, any release of any parties to claims or litigation from which this Fund arose. Such agreements may also include settlement agreements and qualified assignment agreements to effect settlements governed by IRC §§ 104(a)(2) and 130, as may be necessary or appropriate to carry out the powers herein granted or other

assignments as ordered by the Court.

**5-7 Litigation.** The Trustee may initiate or defend, at the expense of the Fund, any litigation relating to or affecting the Fund, or the Trustee's obligations under the Fund, and to initiate or defend any litigation relating to the Fund estate or property, and to compromise, arbitrate, or otherwise adjust claims in favor of or against the Fund. If a specific lien or garnishment is held against a single Claimant, it shall be the responsibility of that Claimant to handle the matter and his/her funds shall be held in the Fund until said matter is resolved.

**5-8 Compliance With Law.** The Trustee is empowered to comply with all requirements imposed by applicable law, rule, or regulation.

**5-9 Discretion in Exercise of Power.** The Trustee may do any other acts it deems proper to effectuate the purpose hereof and to exercise the powers specifically conferred upon it by this Agreement.

**5-10 Modification of This Agreement.** The Trustee shall be empowered to petition the Court for modification of the Articles of this Agreement (including Attachments hereto) if the Trustee determines that such modifications are necessary to conform to legal, tax, or administrative requirements.

## ARTICLE VI
## ADVICE OF COUNSEL

The Trustee may from time to time consult with counsel with respect to any question arising as to the compliance with this Agreement. The Trustee shall be fully protected, to the extent permitted by law in acting in reliance upon the advice of counsel.

## ARTICLE VII
## COMPENSATION FOR ADMINISTRATION

For services performed as Trustee, the initial Trustee shall receive an initial fee of One Thousand Dollars ($1,000.00) plus a monthly fee of $400.00 or .00075 of the remaining fund balance on the first day of each month in which fund principal remains one month after the initial receipt of trust principal, whichever is greater, but in no event shall the compensation for administration exceed the interest generated by the Fund. Provided, however, that any Trustee may be reimbursed for expenses, including travel expenses, reasonably required and incurred by such Trustee in the performance of its duties as Trustee. Any successor Trustee shall receive payment for its services in accordance with its schedule of rates in effect at the time such compensation becomes payable. Such compensation may be paid without Court approval. Trustee agrees that all compensation and expenses shall be paid solely out of interest generated from the fund balance, and that in no event, shall the principal of the fund be utilized to

compensate the Trustee.

## ARTICLE VIII
## SUCCESSOR TRUSTEE

**8-1 Vacancy Caused by Resignation or Removal.** The Trustee may resign for cause or no cause at any time upon written notice delivered to the Court having continuing jurisdiction over the Fund, which in this instance, shall be the County Court at Law, Nueces County, Texas. Such resignation shall become effective upon the written acceptance of the appointment of a successor Trustee. The Court shall have the power to appoint a successor Trustee. If the Court fails to appoint such a successor Trustee, the Trustee shall have the power to appoint a corporate Trustee qualified under local Court rules to serve without bond and to perform Fund services as successor Trustee or it shall have the power to petition the Court to appoint its successor. All of the Trustee's fees and expenses (including reasonable attorneys' fees) attributable to the appointment of a successor Trustee shall be paid by the Fund. No bond or other security shall be required of the Trustee or successor Trustee named in this Fund. Death of the Trustee automatically terminates the role and the Court shall appoint a successor Trustee. Any successor Trustee shall have the same powers, authorities, and discretions as though originally named as the Trustee.

**8-2 Acceptance of Appointment by Successor Trustee.** Unless otherwise ordered by the Court, acceptance of appointment as a successor Trustee shall be in writing and shall become effective upon receipt by the Court of notice of such acceptance. Upon the acceptance of appointment of any successor Trustee, title to the Fund shall thereupon be vested in said successor Trustee, without the necessity of any conveyance or instrument. Each successor Trustee shall have all the rights, powers, duties, authority, and privileges as if initially named as an Trustee hereunder.

**8-3 Preservation of Record of Changes to Trustee.** A copy of each instrument of resignation, removal, appointment, and acceptance of appointment shall be attached to an executed counterpart of this Agreement in the custody of the Court.

## ARTICLE IX
## INDEMNIFICATION

Each Trustee, whether initially named or appointed as a successor Trustee, acts as an Trustee and not personally. With respect to any contract, obligation, or liability made or incurred by the Trustee in good faith, while the Trustee is complying with the terms of this Agreement, the prudent investor rule, or any valid Court order, all persons shall look solely to the Fund and not to the Trustee personally. The Trustee shall not incur any liability, personal or corporate, of any nature in connection with any act or omission of the Trustee in the administration

of the Fund or otherwise pursuant to this Agreement. The Trustee initially named, and any successor Trustee shall be indemnified and held harmless by the Fund, so long as the Trustee complies with the terms of this Agreement, the prudent investor rule or any valid Court order. This indemnification and held-harmless provision shall cover all expenses reasonably incurred by such Trustee in defense of the aforementioned acts or omissions of the Trustee.

## ARTICLE X
## CHOICE OF LAW

This agreement has been created and accepted by the Trustee of The GPP/MCWPC/BANKS Arkansas State Court Rice Cases Qualified Settlement Fund and this Agreement's validity, construction, and interpretation, and the rights created hereunder, shall be governed by the laws of the State of Texas.

## ARTICLE XI
## INTERPRETATION

As used in this Agreement, words in the singular include words in the plural and words in the plural include the singular, and the masculine and neuter genders shall be deemed to include the masculine, feminine, and neuter. The descriptive headings for each article of this Agreement shall not affect the interpretation or legal efficacy of this Agreement. It is agreed that neither the act of entering into this Agreement nor any contribution to the Fund nor any action taken under this Agreement shall be deemed to constitute an admission of any liability or fault on the part of the Trustee or the Defendants, nor does it continue a commitment or agreement, either express or implied, by any or all of them to undertake any further activities outside the scope of this Agreement.

## ARTICLE XII
## SEPARATE DOCUMENTS

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Each provision in this Agreement is valid and severable and enforceable to the fullest extent permitted by law.

## ARTICLE XIII
## TAX ISSUES

**13-1 Generally.** The parties intend that the Fund shall be a Qualified Settlement Fund under IRC § 468B and Regulations §§ 1.468B-1, *et seq*. The Trustee shall take no actions that are inconsistent with the Fund's status as a Qualified Settlement Fund under Section 468B of the Internal Revenue Code, 26 U.S.C. Section 468B, and the Regulations promulgated pursuant thereto and codified at 26 C.F.R. Sections 1.468B-1 through 1.468B-5. Further, the Trustee may petition

the Court to amend, either in whole or in part, any administrative Article of this Trust Agreement, which causes unanticipated tax consequences or liabilities inconsistent with the foregoing. Transferor shall be classified as a "transferor" within the meaning of Regulation Section 1.468B-1(d)(1), 26 C.F.R. Section 1.468B-1(d)(1). The Trustee shall be classified as the "Trustee" within the meaning of Regulation Section 1.468B-2(k)(3), 26 C.F.R. Section 1.468B-2(k)(3). It is further intended that all transfers to the Fund will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Internal Revenue Code, 26 U.S.C. Section 461(h)(1), and Regulation Section 1.461-1(a)(2), 26 C.F.R. Section 1.461-1(a)(2). As such, the Transferor shall not be taxed on the income of the Fund. The Fund shall be taxed on its modified gross income, excluding the sums, or cash equivalents of things, transferred to it. In computing the Fund's modified gross income, deductions shall be allowed for, *inter alia*, administrative costs and other incidental deductible expenses incurred in connection with the operation of the Fund, including, without limitation, state and local taxes, and legal, accounting, and actuarial fees relating to the operation of the Fund. All such computations of the Fund's modified gross income, as well as any exclusions or deductions thereto, shall be compliant and consistent with Treasury Regulation Section 1.468B-2(b)(1)-(4), 26 C.F.R. Section 1.468B-2(b)(1)-(4). The Trustee shall pay all taxes and associated expenses with those taxes from the Fund without the need of a Court Order.

**13-2 Tax Preparation, Reporting, and Withholding Requirements.** The Trustee shall cause to be filed, on behalf of the Trust, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulation Section 1.468B-2(k), 26 C.F.R. Section 1.468B-2(k). Furthermore, in accordance with the provisions of Treasury Regulation Section 1.468B-2(l), 26 C.F.R. Section 1.468B-2(l), the Trustee shall cause to be filed all required federal, state, and local information returns and ensure compliance with withholding requirements. The Trustee may retain independent, certified public accountants to consult with and advise the Trustee with respect to the preparation of any and all appropriate income tax returns, information returns, or compliance withholding requirements. The Transferor (or some other person on behalf of the Transferor) shall supply to the Trustee and to the Internal Revenue Service the statement described in Treasury Regulation Section 1.468B-3(e)(2), 26 C.F.R. Section 1.468B-3(e)(2), no later than February 15th of the year following each calendar year in which the Transferor (or some other person on behalf of the Transferor) makes a transfer to the Fund.

**13-3 Savings Provision.** Notwithstanding anything herein to the contrary, in the event that any portion of this Trust shall at any time be considered not to be in compliance with Internal Revenue Code Section 468B, as amended, together with any and all Treasury Regulations and Internal Revenue Services Notices, Announcements and directives thereunder, such offending Article of this Trust Agreement shall be considered null, void, and of no effect, without any action by any court or by the Trustee. The overarching purpose of this Trust is to at all

times be in compliance with Internal Revenue Code Section 468B and all administrative authority and announcements thereunder. In the event that this Section 13-3 applies to render an offending Section null, void, or of no effect, the remainder of this Agreement shall not be affected thereby, and each remaining term and Section of the Agreement shall be valid and enforced to the fullest extent permitted by law.

**ARTICLE XIV**
**ACCEPTANCE OF FUND**

Charles Kaffie, named as Trustee of The GPP/MCWPC/BANKS Qualified Settlement Fund accepts this appointment and the assets to be transferred to the Fund to be held, administered and distributed as provided in this Agreement.

WITNESS the execution hereof of the Trustee on this _____ day of June, 2011.


By:_____
      CHARLES KAFFIE

KAFFIE INVESTMENT CO., LP
615 North Upper Broadway, Suite 1290
Corpus Christi, Texas 78401
Phone: (361) 882-5501
Fax: (361) 882-3604
Email: ckaffie@4wfg.com
Trustee

10

## CIVIL CASE INFORMATION SHEET

CAUSE NUMBER *(FOR CLERK USE ONLY)*: 2012CCV-62122-3  COURT *(FOR CLERK USE ONLY)*: _____

STYLED GOLDMAN PHIPPS PLLC F/K/A GOLDMAN, PENNEBAKER & PHIPPS, PC, MIKAL C. WATTS, P.C., AND MURRAY LAW FIRM v. GRAY, RITTER & GRAHAM, P.C., WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC, SEEGER WEISS LLP, NEBLETT BEARD & ARSENAULT, LLP, EMERSON POYNTER LLP, WHATLEY DRAKE & KALLAS, LLP, LOOPER REED & McGRAW, AND CHAPMAN, LEWIS & SWAN

*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing. This sheet, approved by the Texas Judicial Council, is intended to collect information that will be used for statistical purposes only. It neither replaces nor supplements the filings or service of pleading or other documents as required by law or rule. The sheet does not constitute a discovery request, response, or supplementation, and it is not admissible at trial.

### 1. Contact information for person completing case information sheet:

**Name:**
Rick Holstein

**Address:**
410 Peoples Street

**City/State/Zip:**
Corpus Christi, TX 78401

**Signature:**

**Email:**
rickholstein@mac.com

**Telephone:**
361-883-8649

**Fax:**
361-883-3199

**State Bar No:**
09915150

### Names of parties in case:

**Plaintiff(s)/Petitioner(s):**

Goldman Phipps PLLC f/k/a Goldman Pennebaker & Phipps, PC, Mikal C. Watts, PC, and Murray Law Firm

**Defendant(s)/Respondent(s):**

Gray, Ritter & Graham, P.C., Wolf Haldenstein Adler Freeman & Herz LLC, Seeger Weiss LLP, Neblett Beard & Arsenault, LLP, Emerson Poynter LLP, Whatley Drake & Kallas LLP, Looper Reed & McGraw and Chapman, Lewis & Swan

[Attach additional page as necessary to list all parties]

### Person or entity completing sheet is:

☒ Attorney for Plaintiff/Petitioner
☐ Pro Se Plaintiff/Petitioner
☐ Title IV-D Agency
☐ Other: _____

**Additional Parties in Child Support Case:**

Custodial Parent:
_____

Non-Custodial Parent:
_____

Presumed Father:
_____

### 2. Indicate case type, or identify the most important issue in the case *(select only 1)*:

| Civil | | | Family Law | |
|---|---|---|---|---|
| | | | | **Post-judgment Actions (non-Title IV-D)** |
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | |
| *Debt/Contract* | ☐ Assault/Battery | ☐ Eminent Domain/ Condemnation | ☐ Annulment | ☐ Enforcement |
| ☐ Consumer/DTPA | ☐ Construction | ☐ Partition | ☐ Declare Marriage Void | ☐ Modification—Custody |
| ☐ Debt/Contract | ☐ Defamation | ☐ Quiet Title | *Divorce* | ☐ Modification—Other |
| ☐ Fraud/Misrepresentation | *Malpractice* | ☐ Trespass to Try Title | ☐ With Children | **Title IV-D** |
| ☐ Other Debt/Contract: | ☐ Accounting | ☐ Other Property: | ☐ No Children | ☐ Enforcement/Modification |
| | ☐ Legal | ____ | | ☐ Paternity |
| *Foreclosure* | ☐ Medical | | | ☐ Reciprocals (UIFSA) |
| ☐ Home Equity—Expedited | ☐ Other Professional Liability: | | | ☐ Support Order |
| ☐ Other Foreclosure | | **Related to Criminal Matters** | **Other Family Law** | **Parent-Child Relationship** |
| ☐ Franchise | ☐ Motor Vehicle Accident | ☐ Expunction | ☐ Enforce Foreign Judgment | ☐ Adoption/Adoption with Termination |
| ☐ Insurance | ☐ Premises | ☐ Judgment Nisi | ☐ Habeas Corpus | ☐ Child Protection |
| ☐ Landlord/Tenant | *Product Liability* | ☐ Non-Disclosure | ☐ Name Change | ☐ Child Support |
| ☐ Non-Competition | ☐ Asbestos/Silica | ☐ Seizure/Forfeiture | ☐ Protective Order | ☐ Custody or Visitation |
| ☐ Partnership | ☐ Other Product Liability List Product: | ☐ Writ of Habeas Corpus— Pre-indictment | ☐ Removal of Disabilities of Minority | ☐ Gestational Parenting |
| ☐ Other Contract: | ____ | ☐ Other: ____ | ☐ Other: ____ | ☐ Grandparent Access |
| ____ | | | | ☐ Paternity/Parentage |
| | ☐ Other Injury or Damage: | | | ☐ Termination of Parental Rights |
| | ____ | | | ☐ Other Parent-Child: |
| **Employment** | **Other Civil** | | | |
| ☐ Discrimination | ☐ Administrative Appeal | ☐ Lawyer Discipline | | |
| ☐ Retaliation | ☐ Antitrust/Unfair Competition | ☐ Perpetuate Testimony | | |
| ☐ Termination | ☐ Code Violations | ☐ Securities/Stock | | |
| ☐ Workers' Compensation | ☐ Foreign Judgment | ☐ Tortious Interference | | |
| ☐ Other Employment: | ☐ Intellectual Property | ☒ Other: Declaratory Judgment Action | | |

| Tax | Probate & Mental Health | |
|---|---|---|
| ☐ Tax Appraisal | *Probate/Wills/Intestate Administration* | ☐ Guardianship—Adult |
| ☐ Tax Delinquency | ☐ Dependent Administration | ☐ Guardianship—Minor |
| ☐ Other Tax | ☐ Independent Administration | ☐ Mental Health |
| | ☐ Other Estate Proceedings | ☐ Other: ____ |

### 3. Indicate procedure or remedy, if applicable *(may select more than 1)*:

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court | ☐ Declaratory Judgment | ☐ Prejudgment Remedy |
| ☐ Arbitration-related | ☐ Garnishment | ☐ Protective Order |
| ☐ Attachment | ☐ Interpleader | ☐ Receiver |
| ☐ Bill of Review | ☐ License | ☐ Sequestration |
| ☐ Certiorari | ☐ Mandamus | ☐ Temporary Restraining Order/Injunction |
| ☐ Class Action | ☐ Post-judgment | ☐ Turnover |